# Richmond.

## FOWLKES V. SOUTHERN RAILWAY CO.

MARCH 9, 1899.

Absent, Cardwell, J.

1. RAILROADS—*Information as to Connections—Negligence—Damages.*—The statement by the agent of a railroad company to a passenger about to embark on one of its trains that the train he is about to take will make close connection with the train of another railroad at a junction mentioned, when in fact no such connection is made, is negligence, for the *direct* consequences of which the company is liable in damages.

2. NEGLIGENCE—*Measure of Damages—Proximate Cause.*—The law refers an injury to the proximate, and not to the remote cause. A man guilty of negligence is not responsible for all the consequences that may or do flow therefrom, but only for such consequences as a prudent and experienced man, fully acquainted with all the circumstances which in fact exist at that moment, could have foreseen or reasonably anticipated.

3. EVIDENCE—*Relevancy—Negligence—Remote Cause.*—It is the province of the court to determine in the first instance whether or not the facts offered in evidence, tending to prove an injury to the plaintiff, are too remote from the defendant's act of negligence to constitute an element of the plaintiff's recovery.

Error to a judgment of the Law and Equity Court of the city of Richmond rendered November 10, 1897, in an action of trespass on the case wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The opinion states the case.

*Smith, Moncure & Gordon,* for the plaintiff in error.

*Beverly B. Munford* and *Henry C. Riely*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

Mrs. Eva C. Fowlkes sued the Southern Railway Company in the Law and Equity Court of the city of Richmond to recover damages for injuries sustained by her in consequence, as she alleges, of the negligent act of the defendant company.

The facts upon which she relies to support her contention are as follows: On the morning of July 22, 1896, Mrs. Fowlkes, a resident of the city of Richmond, purchased of the Southern Railway Company, a ticket to Skinquarter, a station on the Farmville & Powhatan railroad, which crosses the Southern railway at Moseley Junction, twenty-five miles south of Richmond. Skinquarter, her point of destination, is eight miles east of Moseley Junction. The plaintiff had made this trip before, in visiting her parents, and had always found that the train of the Farmville & Powhatan railroad made a close connection with the Southern railway, and that she could step from one train to the other. When she purchased her ticket at Richmond on the morning in question, she asked the agent whether the train which she then proposed to take would connect at Moseley Junction with the Farmville & Powhatan railroad train for Skinquarter. He told her that it would, and she bought a ticket for Skinquarter, and boarded the train. Upon arriving at Moseley Junction, she discovered that no such connection would be made that day. It seems that she was pregnant; that the day was hot and sultry, and a storm was brewing when she got off of the train. The Southern road had no depot there, and she failed to see a small ticket office of the Farmville & Powhatan railroad which had been recently constructed. She walked three or four hundred yards from the place where the train stopped, to a store, where she received such accommodations as it afforded. The Southern railway having made

no provision for getting her to her destination, she endeavored to find the means of private conveyance.   After waiting in the store for about four hours, and suffering great anxiety, she succeeded in hiring a team, and set out for her father's home. It was raining at the time, but the owner of the team would not let it wait, and, as it was getting late, she thought it best to start.   The road was very rough, and she was greatly jolted. Several hard showers came up during the drive, and she was wet through, and her baggage was also damaged.   She· was perfectly well when she got on the train at Richmond, and when she got off at Moseley Junction.   When she got to her father's house she was suffering with abdominal pains and hemorrhage from the womb.   These pains continued until August 23, 1896, when she suffered a miscarriage.   Since that time she has been in bad health, and has had another miscarriage.

After the evidence was closed, the defendant asked the court to exclude from the jury " all evidence of the plaintiff and witness Eva C. Fowlkes, and which tended in any way to show that she suffered from the wetting, the cold, the jolting, the anxiety of mind, the pains, the subsequent sickness and miscarriage occasioned by her trip in the buggy from Moseley Junction to Skinquarter; and in like manner to strike out the testimony of the three medical experts tending to establish that the miscarriage complained of was the result and consequence of said wetting, cold, jolting, anxiety of mind, &c." The court sustained this motion, and struck out all of said evidence as requested ·by defendant's counsel, and to this action of the court the plaintiff excepted.

A number of instructions were asked by the plaintiff, which the court refused to give, and this action· of the court was also excepted to.   Thereupon the court gave an instruction of its own, to which the plaintiff excepted; whereupon the jury found a verdict for the plaintiff for $150, upon which judg-

ment was entered, and the.case is before us upon the plaintiff's objection to the rulings of the trial court.

The sole question which we need to decide arises upon the action of the court in sustaining defendant's motion to exclude the plaintiff's testimony.

That the defendant was guilty of negligence is conceded, and that it is liable in damages for the direct consequences of that negligence is also conceded. The negligent act of the defendant consisted in the statement by its agent to the plaintiff, at the time she purchased her ticket, that the train she was about to take made close connection with the Farmville & Powhatan railroad at Moseley Junction, and the contention of the plaintiff is that this negligence was the proximate cause of the entire sequence of events which followed, including the delay at Moseley Junction, the rough ride across the country at Skinquarter, the exposure to the rain and storm, and the subsequent miscarriage and loss of health.

" It is not only requisite that damage, actual or inferential, should be suffered, but this damage must be the legitimate sequence of the thing amiss. The maxim of the law here applicable is, that in law the immediate and not the remote cause of any event is regarded. * * * In other words, the law always refers the injury to the proximate, not to the remote cause. * * * If an injury has resulted in consequence of a certain wrongful act or omission, but only through or by means of some intervening cause, from which last cause the injury followed as a direct and immediate consequence, the law will refer the damage to the last or proximate cause, and refuse to trace it to that which was more remote. * * * To the proximate cause we may usually trace consequences with some degree of assurance; but beyond that we enter a field of conjecture, where the uncertainty renders the attempt at exact conclusions futile. * * * If the wrong and the resulting damage are not known by common

experience to be naturally and usually in sequence, and the damage does not, according to the ordinary course of events, follow from the wrong, 'then the wrong and the damage are not sufficiently conjoined or concatenated as cause and effect to support an action."

Shearman & Redfield, in their book on the Law of Negligence, sec. 28, state the law as follows: " Very great difficulty has been found in determining what damages should be considered as flowing, in a ' natural and continuous sequence,' from an act of negligence, especially when it is not a matter of contract liability.   On the one hand, it has been maintained that, in cases of tortious negligence, the defendant should be held responsible for all damages which do in fact result from his wrongful acts, whether they could have been anticipated or not.   On the other hand, it has been maintained that he should not be held responsible for any damages except such as he could, in the exercise of reasonable foresight, have foreseen as the probable consequences of his act.   As a middle ground, it has been asserted that he should be made responsible for such damage as is known by common experience to usually follow such a wrongful act.   The weight of authority seems to be decidedly against holding the defendant liable for all the actual consequences of his wrongful acts, when they are such as no human being, even with the fullest knowledge of the circumstances, would have considered likely to occur; and, on the other hand, the best authorities seem to be quite opposed to the theory that he should be held liable only for such consequences as he ought himself to have foreseen.   So much difficulty, indeed, has been felt in attempting to lay down a rule to cover all possible cases, that some of the ablest judges have declined to state any fixed rule, and have indicated a disposition to leave all doubtful cases to the jury."

Continuing, the same authors say, at sec. 29 : " The practical solution of this question appears to us to be that a person guilty of negligence should be held responsible for all the

consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed (whether they could have been ascertained by reasonable diligence or not) would, at the time of the negligent act, have thought reasonably possible to follow, if they had occurred to his mind."

In *Connell* v. *C. & O. Rwy. Co.*, 93 Va. 57, this court adopts the language of Justice Miller in *Scheffer* v. *R. R. Co.*, 105 U. S. 249 : " To warrant the finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

The negligent act proved in this case was committed at the time the ticket was purchased, and it seems to us manifest that a most prudent and experienced man, acquainted with all the circumstances which existed at that moment, could never have foreseen or anticipated the consequences which supervened. It might reasonably have been anticipated that a failure to make the connection at Moseley Junction would involve delay and inconvenience, but not that the plaintiff would procure a buggy, and in the face of a storm, in her delicate condition, drive over a rough road to her father's house, and that a miscarriage would be the result.

It was the province of the court to say what evidence should go before the jury, and its action in that respect is of course the subject of review, but it is a question exclusively for the court, and upon it was devolved the duty of determining in the first instance whether the facts offered in evidence tended to prove an injury to the plaintiff too remote from the defendant's act of negligence to constitute an element in the plaintiff's recovery.

For the foregoing reasons we are of opinion that there was no error in excluding the evidence offered. This disposes of the controlling question in the case.

We do not deem it necessary to discuss the instructions, as the verdict of the jury was plainly right upon the. evidence properly in the record.

Upon the whole case we are of opinion there· is no error in the judgment of the Law and Equity Court, which is affirmed.

*Affirmed.*