## Wytheville.

### A. H. JUDY AND W. G. KECKLER v. JOHN M. DOYLE.

#### June 16, 1921.

1. USAGES AND CUSTOMS—*Admissibility in Evidence—Relevancy—Case at Bar.*—One of defendants, partners, placed in a Ford truck three mowing machine blades. These blades protruded from the right-hand rear corner of the truck from eighteen to twenty inches. He then parked the car at an angle of about forty-five degrees to the curb line, with his front wheels against the curb and the protruding blade ends facing the street. The car was parked, with very little space, between two other cars. Plaintiff riding a bicycle was injured by running into the blades.

   *Held:* That the issue between the parties was whether defendant failed to use ordinary care when he parked his car with the open and protruding blades, and that therefore evidence of a custom that prudent farmers transported mower blades in this manner was inadmissible.

2. NEGLIGENCE—*Parking Car in Street with Mower Blades Protruding—Case at Bar.*—While defendants in the instant case enjoyed the right to park their car on the street, and for the extent of time allowed by law were entitled to the use of the space so occupied, they had no right to occupy measurably the space between their truck and the next car with a vicious and dangerous implement liable to inflict injuries upon those exercising ordinary care in their use of the streets. Ordinary prudence would suggest that such implements should be wrapped so as to render them harmless.

3. NEGLIGENCE—*Parking Car in Street with Mower Blades Protruding—Rider of Bicycle—Case at Bar.*—The rider of a bicycle, when threading his way along a congested street, filled with other speeding vehicles of a far more massive and pretentious character, must often seek safety by pursuing the very course followed by the plaintiff in the instant case, namely, by turning into the curb at the first opening which presents itself. Under such circumstances, he should not be unexpectedly confronted, in his quest for safety, with the sharp and serrated edges of exposed and dangerous implements.

4. NEGLIGENCE—*Parking Car in Street with Mower Blades Protruding—Anticipation of Injury—Case at Bar.*—Where defendant parked his car near another with mower blades protruding from; the rear end and plaintiff, a bicycle rider, was injured in attempting to ride between the parked cars to save himself from a collision, while defendant might not have anticipated the concurrence of circumstances which resulted in the injuries suffered by the plaintiff, yet defendant's act was a negligent one and his liability is not dependent upon his ability to foresee the ensuing circumstances in precise detail.

5. NEGLIGENCE—*Proximate and Remote Cause—"Foreseeableness" or Anticipation of Consequences.*—The "foreseeableness," or reasonable anticipation, of the consequences of a wrongful or negligent act, is not the measure of liability of the guilty party, though it may be determinative of the question of his negligence. When once it has been determined that the act is wrongful or negligent, the guilty party is liable for all of the consequences which naturally flow therefrom, whether they were reasonably to have been anticipated or not, and, in determining whether or not the consequences do naturally flow from the wrongful act or neglect, the case should be viewed retrospectively.

6. NEGLIGENCE—*Contributory Negligence—Parking Car in Street with Mower Blades Protruding—Injury to Bicycle Rider.*—Plaintiff, a bicycle rider, was injured when he turned from the street to the sidewalk between two parked cars, by mower blades protruding from the rear end of one of the cars. Plaintiff, when he turned in between the cars, was seeking to avoid a collision, and the evidence established that he was proceeding at the time in the most careful and judicious manner, and that his unexpected collision with the mower blades was in no wise due to recklessness or failure to exercise ordinary care and prudence.

*Held:* That plaintiff was not guilty of contributory negligence.

7. NEGLIGENCE—*Proximate and Remote Cause—Parking Car in Street with Mower Blades Protruding—Intervening Cause.*—Plaintiff, a bicycle rider, was injured when he turned from the street to the sidewalk between two parked cars, by mower blades protruding from defendants' car. Two cars were approaching plaintiff; but the one in front stopped. Thereupon the driver of the second car turned to the left, making it necessary for plaintiff to steer to the right, and to enter the space between the parked cars to avoid a collision.

*Held:* That there was no merit in the contention of defendants that their initial negligence was not the proximate cause of plaintiff's injury, but that injury was directly traceable to the independent act of the driver of the second car.

8. NEGLIGENCE—*Proximate and Remote Cause—Province of Court and Jury.*—It is the province of the court to determine in the first instance whether or not the facts offered in evidence, tending to prove an injury to a plaintiff, are too remote from the defendants' act of negligence to constitute an element of the plaintiff's recovery. But where the court finds itself uable to make this ascertainment of remoteness, the question of what is the proximate cause of an injury is ordinarily a question for the jury.

9. NEGLIGENCE—*Contributory Negligence—Notice Required by Section 6092 of the Code of 1919.*—Code of 1919, section 6092, requires a defendant in actions of tort to give notice in writing if he intends to rely upon the defense of contributory negligence, but provides that defendant upon failure to give such notice shall not be precluded from relying upon contributory negligence disclosed by plaintiff's testimony.

*Held:* That in the instant case, an action of tort, where defendant failed to give such written notice, the court did not err in modifying an instruction as to the defense of contributory negligence, so as to limit the defense to contributory negligence disclosed by the plaintiff's testimony.

10. NEW TRIALS—*Excessive Damages—Passion or Prejudice.*—The appellate court will not set aside a verdict in a personal injury case on the ground that the damages are excessive, unless the damages are so excessive as to warrant the belief that the jury must have been influenced by partiality or prejudice, or have been misled by some mistaken view of the merits of the case.

11. NEW TRIALS—*Excessive Damages—Injury to Arm—Case at Bar.*—In the instant case, plaintiff, a boy, was severely injured and left with a maimed and distorted hand, and in the judgment of one physician, he was "physically incapacitated for usefulness at least sixty per cent."

*Held:* That a verdict for plaintiff for $7,542.85 would not be disturbed as excessive.

Error to a judgment of the Corporation Court of the city of Fredericksburg in an action of trespass on the case. Judgment for plaintiff. Defendants assign error.

*Affirmed.*

The opinion states the case.

*F. M. Chichester* and *A. T. Embrey,* for the plaintiffs in error.

*Wm. W. Butzner* and *C. O'Conor Goolrick,* for the defendant in error.

SAUNDERS, J., delivered the opinion of the court.

This action was brought by the defendant, in error, an infant under the age of twelve years, suing by his next friend, against the plaintiffs in error to recover damages for an injury to the right arm of the plaintiff, alleged to be due to the negligence of the defendants.

The trial resulted in a verdict for the plaintiff for $7,542.85, upon which the judgment under review was rendered. The pertinent facts, and the circumstances under which the injury complained of was suffered, are as follows:

The appellants, A. H. Judy and W. G. Keckler (defendants in the trial court) operated a farm in Stafford county, under a partnership arrangement. In the discharge of certain duties in connection with the farming operations, W. G. Keckler came to Fredericksburg on August 23, 1919, in a Ford auto-truck. While in town, he purchased for the use of the farm three mowing machine blades, which he placed in the body of the truck. Two of these blades were sixty-five inches long, and the third one seventy-seven inches long.

A mowing machine blade, according to the description given, is a piece of tough steel from sixty-five to seventy-seven inches, or more, in length, about five-sixteenths of an inch thick, and seven-eighths of an inch wide. In this strip, holes are drilled and sections riveted thereon. These sections have one blunt end, are about three inches wide at the base, and are in the shape of the following figure:

The edges of the sections are beveled, and ground very sharp. Ordinarily about twenty-four of these sections are riveted on a six foot blade.

"At the end of the blade that is constructed to fit into the pitman is a ball, part of the ball and socket joint, the socket being on the end of the pitman." This end of the blade is called the knuckle end.

According to the testimony, the defendant, Keckler, placed these blades in his truck body, piled the one on the other, with the sharp edges of the sections exposed. The knuckle ends were in the forward left-hand corner of the body, and the other ends in the rear right-hand corner, " the blades being thus diagonally across the said body, and projecting from the rear." The extent of this projection is stated in varying terms. Averaging these statements, it may be said with substantial accuracy that the blades projected from eighteen to twenty inches beyond the tail end of the truck body. The box constituting the rear end of the truck was fifty-four inches long, thirty-four inches wide, and five inches deep, the bottom of this body being thirty-three inches from the ground, and projecting backward over the rear axle twenty-eight inches. Having loaded the loose blades upon his truck in the fashion described, Keckler proceeded by various streets to Caroline street, also called Main street, and the principal street of the city. He proceeded southward along this street to about the middle of the block, and parked his car at an angle of about forty-five degrees to the curb line, with his front wheels against the curb. The relative location to the curbing of the truck, and of the projecting blade ends, with their sharp cutting edges facing the street, are given in the following figure,

which is merely illustrative, and not undertaken to be
drawn to scale:

The truck was parked between two cars, "quite a large
one being on the upper side of the truck, which to one com-
ing down the street, obscured in part the view of the
truck." There was very little space between the truck and
the car next down the street, and about three feet between
it and the car next above, and up the street. These cars
were parked at about the same angle as the Ford truck.

On the left side of Caroline street—that is, the east side
—and opposite from, and slightly below the place where the
truck was parked, was a pile of brick and other debris in
the street. A Ford sedan was parked near this rubbish
heap, and extending into the street further than it should
have done. This rubbish heap and sedan so obtruded upon
the street that when cars were parked on the opposing side,
as was the case at the time of the accident, the street was
reduced to a mere alley-way for a short distance, so much
narrowed indeed that in this "throttle" two cars could not
pass.

Having parked his car as described, *supra,* Mr. Keckler
left the same unattended, and went off to purchase a pair
of shoes. Coming now to the immediate circumstances of
the accident, and the conduct of the plaintiff, it appears that
the latter was riding a bicycle slowly and carefully down
Main, or Caroline street. Behind the boy was a motor car,
also going down Main street. In front of the boy, coming
up Main street, and approaching the "throttle," were two
motor cars. The front car stopped in, or just at the mouth
of, the "throttle." This action caused the second car to turn

slightly to the left, or west side of the street, and as it continued to move forward, it completely closed the narrow passage left for moving cars. Thus the boy was caught between the cars in front, and the one approaching in his rear. In his search for safety he swerved to the right, riding close to the cars parked on that side of the street. When he came to the opening between the defendant's truck, and the car north of it, he headed in for the sidewalk, ran into the projecting blades, and was badly cut in the right arm. Dr. A. J. Wilson, a veterinary surgeon, who saw the accident, describes it, and the attendant circumstances, as follows:

I was looking at the time up Main street for some reason, when this boy came riding down the street on a bicycle, and it appears the way was blocked, so that the boy could not get through, and I saw him turn in, go towards the sidewalk with his bicycle, and strike these blades. * * *

Q. What caused young Doyle to turn in towards the car with the blades in it?

A. The street was blocked, he couldn't help himself, it was the only salvation he had, he thought there was an opening he could get thru to the side-walk. The street was blocked with another team, or an automobile, I couldn't say which.

*        *        *        *        *        *        *        *

Q. And you say he turned to the right to avoid the approaching car?

A. Yes, sir.

*        *        *        *        *        *        *        *

Q. Did you see the boy when he turned in to escape this jam?

A. Yes sir.

Q. At what speed?

A. Not very fast, just creeping, moseying along.

*        *        *        *        *        *        *        *

Q. How far was the car from him, that is the car going in the opposite direction, when he turned in?

A. Right about behind me—might have been down Main a little, it was right close to me.

Q. How many car lengths from him?

A. About one car length.

\*  \*  \*  \*  \*  \*  \*  \*

Q. Tell the jury the exact position of the boy and his wheel at the time he was cut.

A. He turned in, these blades sticking out in this way (indicating) extending behind the car, and came in contact with the blades when he turned, and of course sticking that way, the impaction with these blades severed the arteries in the boy's arm.

\*  \*  \*  \*  \*  \*  \*  \*

Q. From what you saw, please state whether or not young Doyle lost control of his machine before he struck the blades.

A. I don't think so.

Henry Satterwhite, another eye witness of the accident, testifies in part as follows:

Q. Just before he came in contact with the blades, in which direction was he looking, and what did he appear to be looking at?

A. At the cars that were coming towards him, and down Main street.

Q. And then what did he do?

A. He got up close to the car, he was pretty close to the cars that were parked on the right-hand side of Main street.

Q. What did he do just before he came in contact with the blades?

A. He must have put on his brakes, he slid down and lurched into the car.

\*  \*  \*  \*  \*  \*  \*  \*

Q. Did he lose control of his wheel, as far as you were able to observe?

A. I don't think he did. He stopped it because he was in a close place. I am sure he did not lose control of his wheel, because when he stopped his wheel he lurched to the right side, and went to put his feet down and catch himself.

Q. And it was then he came in contact with the blades?

A. Yes, sir.

*Cross-Examination.*

\*   \*   \*   \*   \*   \*   \*   \*

Q. Could the little man have seen these blades if he had been observant?

A. I don't think anybody would have noticed them, if they had been in the place he was in.

Q. What was that?

A. Because when you are in a close place, you are not looking on the right hand side, you are looking out at what is in front, and trying to get out of the way.

Q. His attention then seems to have been occupied with the oncoming vehicle, and not with the truck?

A. No, sir, I do not think he could have paid any attention to the standing truck with the car coming right towards him.

Q. When his wheel stopped you say it kind of turned to the right?

A. It lurched to the right.

Q. That is the whole wheel would have fallen to the ground if he had not been on it?

A. It would have fallen, but when anybody goes to stop a wheel, they always lurch to the right, and put their foot down to catch themselves.

Doctor C. Mason Smith, describing the injuries suffered by the plaintiff, states that the large artery in the arm, called the brachial artery, and all the veins in the front of the arm, and the nerves, were severed, also the biceps muscle and tendon. In the opinion of Dr. S. L. Scott, a

witness for the plaintiff, the boy is incapacited for physical usefulness, conservatively speaking, sixty per cent.

The boy's right forearm is smaller than the left, the hand and fingers of that arm are smaller, the arm itself a little crooked and the second, third, fourth and fifth fingers of the hand are contracted.

The defendants filed six bills of exceptions in the progress of the trial. The first three exceptions related to certain testimony offered by the defendants and excluded by the court.

This testimony undertook to establish "the usual manner in Virginia—and in the Fredericksburg community—in which careful and prudent farmers transport mower blades from the retail stores to their farms, and that the method of transportation adopted by defendants with the blades in question was similar."

Apart from other objections that might be made to this testimony, it was plainly irrelevant.

[1] The issue between the parties in the instant case was not whether for the purpose of continuous transport through the streets of Fredericksburg, or along the highways of the county, the mower blades were packed in a reasonably sufficient and prudent fashion, but whether the defendant failed to use ordinary care when he parked his car with the open and protruding blades, as described, and left the same unattended. Conceding that the defendants could have fully proved that when the truck was in motion, the exposed and protruding blades were not a menace, or source of danger, to other travelers on the streets, or highways, such evidence would in no wise have aided the solution of the precise issue presented in the instant case. There was no error in the action of the trial court excluding this testimony.

51

A further contention of the defendants is that the "de-fendants' truck had the right to be where it was, and in the manner in which it was," and that this being so, the "defendants were not liable whether the injury complained of was the result of pure accident, or the result of contributory negligence on the part of the plaintiff, or of both of these causes combined."

[2] Undoubtedly the defendants enjoyed the right to park their car on the street, and for the extent of time allowed by law they were entitled to the use of the space so occupied. But they had no right to occupy measurably the space between their truck, and the next car above it, with a vicious and dangerous implement liable to inflict injuries upon others exercising ordinary care in their use of the streets.

[3-5] Under the conditions of modern traffic, the streets of a city are used by many forms of motor and other vehicles, including bicycles. Pursuant to the law of the road, the driver of a vehicle meeting another vehicle must reasonably drive to the right-hand. The rider of a bicycle, when threading his way along a congested street filled with other speeding vehicles of a far more massive and pretentious character, must often seek safety by pursuing the very course followed by the plaintiff in the instant case, namely, by turning into the curb at the first opening which presents itself. Under such circumstances he should not be unexpectedly confronted, in his quest for safety, with the sharp and serrated edges of exposed and dangerous implements. Ordinary prudence would suggest to the owner of a car that if he proposed to park the same under the conditions appearing in this case, and leave it unattended, he should at least wrap in burlap, or other material, the dangerous implements which he carried, or enclose them between boards in the fashion described by one of the witnesses. Doubtless the defendant, when he parked his car, did not

anticipate the concurrence of circumstances which resulted in the injuries suffered by the plaintiff, but if this act of his was a negligent one, and in our judgment it was, the defendant's liability does not depend upon his ability to foresee the ensuing circumstances in precise detail. The rule of liability in cases of the character of the one in judgment was announced in *N. & W. Ry. Co.* v. *Whitehurst,* 125 Va., p. 263, 99 S. E. 569, in the following terms: "The 'foreseeableness' or reasonable anticipation of the consequences of a wrongful or negligent act is not the measure of liability of the guilty party, though it may be determinative of the question of his negligence. When once it has been determined that the act is wrongful or negligent, the guilty party is liable for all of the consequences which naturally flow therefrom, whether they were reasonably to have been anticipated or not, and in determining whether or not the consequences do naturally flow from the wrongful act, or neglect, the case should be viewed retrospectively, that is looking at the consequences, were they so improbable, or unlikely to occur, that it would not be fair and just to charge a reasonably prudent man with them. If not, he is liable.

"This is the test of liability, but when liability has been established, the extent is to be measured by the natural consequences of the negligent, or wrongful act. The precise injury need not have been anticipated. It is enough if the act is such that the party ought to have anticipated that it was liable to result in injury to others."

See also, to the same effect, the case of *Tripp* v. *City of Norfolk,* 129 Va. 566, 106 S. E. 360, and the cases therein cited.

The question presented in this case is whether the defendants used reasonable care and skill in the exercise of the lawful right to occupy the street. Certainly upon the facts presented, reasonable, fair minded men, to say the least, might differ over the question of the exercise of rea-

sonable care on the part of the defendant in parking and
leaving his truck with the mowing blades exposed in the
manner depicted by the evidence. The court remitted to the
jury under a proper instruction the determination of three
questions:

First, whether the defendants, in respect of parking and
leaving their truck under the circumstances disclosed, failed
to use ordinary care.

Second, if the jury considered that the defendants did
fail in this respect, whether such failure on their part was
the proximate cause of the plaintiff's injury.

Third, whether the injury sustained by the plaintiff was
sustained on his part while exercising such a degree of care
and caution as under the circumstances might reasonably
be expected from one of his age and intelligence.

[6] The jury found for the plaintiff on all of these issues
and there is no ground apparent for disturbing their ver-
dict. With respect to contributory negligence, and the de-
gree of care and prudence to be expected of a boy of the
plaintiff's age and intelligence, the jury was fully instruct-
ed. The evidence clearly shows that young Doyle was ac-
customed to drive motor vehicles, knew how to ride a
bicycle, and was acquainted with the life and dangers of
the streets of a city. It is positively established by the testi-
mony of the eye witnesses to the accident that the boy was
proceeding at this time in the most careful and judicious
manner, and that his unexpected collision with the mowing
blades was in no wise due to recklessness, or failure to exer-
cise ordinary care and prudence. At the time that he turned
into the curb, the plaintiff was confronted with a situa-
tion likely to occur to a bicycle rider at any time on a
street crowded with traffic, and particularly likely to occur
on a street narrowed as Main street was at the place of the
accident by cars parked on both sides of the thoroughfare,
supplemented by a large rubbish heap. Under such circum-

stances the child might have lost his head, but the testimony shows that he did not, but proceeded with care and circumspection. Apart from the finding of the jury, we are of opinion from the evidence that the plaintiff was not guilty of contributory negligence.

[7] The contention of the defendants that their initial negligence was not the proximate cause of the plaintiff's injury, but that this injury was directly traceable to the independent act of one Shelton, is not supported by the law, or the facts of this case. Two cars were approaching the boy. The one in front stopped. Thereupon Shelton, who was driving the second car, turned to the left and entered the "throttle," or narrow passageway, between the rubbish pile and the Ford sedan on the east side of the street, and the truck and the other cars on the opposing side, thus making it necessary for the boy to steer to the right, and enter the space above the truck. It is true that the mower blades were not occupying the alley-way, or "throttle," but they were occupying in part a portion of the street which the rider of the bicycle was entitled to use for the purpose of safety when confronted with the situation presented in the instant case arising from the use of a congested street by vehicles moving in opposite directions. It is to be expected, and to be prepared for, that in a line of moving vehicles some one vehicle may unexpectedly stop. The drivers of other vehicles must be prepared to act according to the circumstances in which each one finds himself. Shelton in the exercise of ordinary care turned to the left when the vehicle in front stopped. This was the proper thing to do. The plaintiff in the exercise of the same care turned into an apparently open space, seeking the curb, and intending to stop until Shelton's car had passed. On his way to the curb, proceeding slowly, he ran into the exposed mower blades.

[8] It is the province of the court to determine in the first instance whether or not the facts offered in evidence, tend-

ing to prove an injury to a plaintiff, are too remote from the defendant's act of negligence, to constitute an element of the plaintiff's recovery. *Fowlkes* v. *Southern R. R. Co.,* 96 Va. p. 742, 32 S. E. 464.

But the trial court found itself unable to make this ascertainment of remoteness, and instructed the jury to determine from the evidence whether the defendants failed to exercise ordinary care, and whether this failure, if it took place, was the proximate cause of the plaintiff's injury. · This action of the court, as heretofore noted, was proper, under the circumstances, and in no wise to the prejudice of the defendants.. "The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science, or legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it." *Railway Co.* v. *Kellogg,* 94 U. .S. p. 469, 24 L. Ed. 256. The outstanding facts of this case are first, the failure of the defendants to use reasonable skill and care in the exercise of the lawful right to occupy the street; second, the resulting injury to the plaintiff through no fault of his, while lawfully using the same thoroughfare.

[9] Defendants assign as error the failure of the court to give instructions A, B, F and G asked for on their part. In view of the principles and conclusions heretofore announced, A and G were properly refused, since in substance they directed the jury to find for the defendants upon the theory that on the facts established by the evidence, the defendants, as a matter of law, were not liable for the injuries suffered by the plaintiff. Instruction B was modified and given for the defendants as instruction J. This modification consisted in adding after the words "all the circumstances of this case," the words "as disclosed from the plaintiff's testimony." This addition was proper, as the defendants had failed to give the notice relating to the defense of contributory negligence required by section 6092

of the Code. Instruction F was modified in the same manner as instruction B, and given for the defendants as instruction L.

The instructions given by the court covered all the necessary features of the case, and fully and accurately presented the law to which the parties were respectively entitled. Neither in the instructions given, nor in the instructions refused, do we find error.

[10-11] Defendants' final assignment of error is that the verdict was excessive, and on that ground should have been set aside. The boy was severely injured and is left with a maimed and distorted hand. In the judgment of one physician he is "physically incapacitated for usefulness at least sixty per cent." There is hope of some relief from his present condition by an operation, but the success of that operation is entirely problematical. There is no evidence that the jury was moved by passion, gross error or improper motives to the prejudice of the defendants. As this court said in *Southern Railroad Company* v. *Smith*, 107 Virginia, p. 553, 560, 59 S. E. 372-375: "There is no rule of law fixing the measure of damages in these cases, and it cannot be reached by any process or computation. It is, therefore, the established rule, settled by numerous decisions extending from *Farish & Co.* v. *Reigle*, 11 Gratt. (52 Va.) 697, 62 Am. Dec. 666, to * * * *N. & W. R. R. Co.* v. *Carr*, 106 Va. p. 508, 56 S. E. 276, that this court will not disturb the verdict of the jury, unless the damages are so excessive as to warrant the conclusion that the jury must have been influenced by partiality or prejudice, or have been misled by some mistaken view of the merits of the case."

It is not considered that the facts of the instant case justify such a conclusion.

We find no error in the action of the trial court, and the judgment complained of is affirmed.

*Affirmed.*