# Richmond

## ELIZABETH YOUNG WYATT v. THE CHESAPEAKE AND POTOMAC TELEPHONE COMPANY, ETC.

March 24, 1932.

Present, Campbell, C. J., and Holt, Epes, Gregory and Chinn, JJ.

The opinion states the case.

*Montague & Holt* and *J. Winston Read,* for the plaintiff in error.

*Lett, Murray & Ford* and *McGuire, Riely & Eggleston,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

This is an action to recover damages for injuries suffered by the plaintiff on the night of December 15, 1929, when an automobile in which she was riding, driven by her husband, struck one of the poles of the defendant company. They were at that time returning to Hampton along the East Hampton-Buckroe Beach road. She recovered a verdict which the trial court, on motion, set aside, being of opinion that this pole upon the highway was not the proximate cause of injury. It then dismissed the case under authority conferred upon it by Code, section 6251.

This road is thirty feet wide. Along its center runs a cement pavement sixteen feet wide. From it a shoulder four feet, three inches wide, slopes to a ditch. This ditch is two feet wide at its top, one foot deep, measured from the surface of the pavement, and nine inches deep, measured from the roadside shoulder. On its far side is an excess embankment about five inches high, probably made of dirt dug from the ditch, so that the outer edge, measured from its top, is about seventeen inches deep. Its side nearest the road is a moderate slope; that on the far side is somewhat steeper. It is seven feet from the edge of the concrete to the outer edge of the roadway. The pole, which was a little

over ten inches in diameter, stood on the line and projected nine inches into the right of way. That is to say, for nine inches it stood on this shoulder and across the ditch. By the highway and adjoining it, ran what is known as the Howard street road. That road was forty feet wide and was a private way, dedicated to the public but never accepted, and so was never a public way. *Gaines* v. *Merryman,* 95 Va. 660, 29 S. E. 738. In this private road the defendant's line of poles first ran, put there at some time between 1918 and 1921. This line of poles was moved from that location to where it now stands in 1927 or 1928. The road on which the accident occurred was established in 1921 or 1922.

■ Since the Howard street road was a private road the county had no authority to control the location of poles there and undertook to exert none, although their actual location followed conferences with the chairman of the board of supervisors and with the county surveyor.

The county gave no permission to locate the poles where they now stand, although that was done in accordance with a plat submitted to the county surveyor and approved by him.

Under section 1287, Code of 1887, telephone companies were given the right to place their poles in county roads, provided the ordinary use of such roads was not thereby obstructed, but the General Assembly, section 1290, of that Code, reserved the right to repeal, alter or modify this privilege at pleasure. At an extra session of the legislature, Acts 1902-3-4, page 1000, chapter 609, subchapter 8, telephone companies were again given the right to construct, maintain, and operate lines along public roads, provided they did not interfere with their ordinary use, and provided further that the right to so place them was given by the proper board of supervisors by ordinance regularly adopted. This is the law today. See Code, sections 4035, 4037, as amended by Acts 1926, chapter 549. In the Acts of 1904,

page 191, chapter 106, boards of supervisors were given control, supervision, management and jurisdiction over all county roads.

The board of supervisors of Elizabeth City county, on April 30, 1895, granted to the Hampton Telephone Company permission to construct, maintain and operate its line along any of the county roads of that county. That right the company then had under general law. The board, however, sought to ratify and reaffirm what had been done in 1895 by this blanket resolution, adopted on September 27, 1922:

"Be it resolved by the board of supervisors of Elizabeth City county, Virginia, that permission be and the same is hereby granted to the American Telephone and Telegraph Company of Virginia, its successors and assigns, to acquire, maintain, occupy and use such portion of the telephone and telegraph system and works of the Chesapeake and Potomac Telephone Company of Virginia, in place or hereafter constructed upon, along, in, under and through the roads, streets, highways and other public places in the county of Elizabeth City, as the said American Telephone and Telegraph Company of Virginia may require in the conduct and prosecution of its business, under such arrangements as may be agreed to by the two companies.

"Provided, however, that when any new lines are to be established by the said American Telephone and Telegraph Company of Virginia, then and in that event the condition under which new work is to be done shall be first approved by the board of supervisors of Elizabeth City county."

This resolution, certainly as to new work, was little more than a restatement of the general law. New work had to be done under the supervision of the board of supervisors. "The condition under which new work is to be done shall be first approved by the board of supervisors of Elizabeth City county." There was here no such approval. It is true that the company acted in good faith. It recognized

the limitation thus imposed upon it, but made this mistake. It secured the approval of the county surveyor when it should have secured that of the board of supervisors.

■■ It is also true that on January 31, 1906, the Hampton Telephone Company conveyed all of its property rights, franchises and privileges to the Southern Bell Telephone and Telegraph Company. For this there was statutory authority. See Pollard's Code of 1904, section 1105-C, subsection 2, subdivision (e). The charter of that company was afterwards amended and its name was changed to the Chesapeake and Potomac Telephone Company of Virginia. Certainly so far as this case is concerned it enjoys the rights of its predecessors, whatever they may be. But these facts do not alter the situation. The pole which did the damage was planted without the consent of the board of supervisors of Elizabeth City county, and therefore without statutory consent and so was negligently placed (*Standard Oil Co.* v. *Roberts*, 130 Va. 532, 107 S. E. 838), and this although it may not have unnecessarily interfered with the use of this public highway as such; but negligence is not always actionable negligence as we shall hereafter see. The trial court was of opinion that it must be the proximate cause of plaintiff's hurt, and was plainly right. Until that has been established, no recovery can be sustained, and upon failure to sustain that burden this case turns.

■ Plaintiff's husband, who was driving at a lawful rate of speed, undertook in a proper manner to pass a car ahead. When he was nearly abreast of it, that car suddenly turned to its left to avoid striking three soldiers coming down the road afoot. These men were, however, not seen by Mr. Wyatt until after the accident. When the car ahead turned to the left it was necessary for Mr. Wyatt to turn also. In doing this he ran off of the concrete across the road shoulder, into the ditch, and up upon the far bank, striking the pole with his left front wheel. He was not negligent

and even if it be conceded that he acted unwisely it was error *in extremis*.

■ With contributory negligence out of the way we come back to proximate cause. It is true that the defendant has violated the statute, and that plaintiff is given a right of recovery by Code, section 5785; but it gives no new right and was designed merely to prevent a wrongdoer from pleading that he had been already punished. It is still necessary that disobedience of a statute be the proximate cause of injury. *Edwards* v. *Laurel Branch C. Co.*, 133 Va. 534, 114 S. E. 108; *Hortenstein* v. *Virginia-Carolina R. Co.* 102, Va. 914, 47 S. E. 996, 999.

Of course it is true that but for the location of this pole there would have been no accident, but its unlawful location and the happening of the disaster leaves the question of causal connection still open. The rule which controls its application is sometimes difficult to apply, but the governing principle is plain enough as the following authorities abundantly show.

In *Bird* v. *St. Paul Fire & Marine Ins. Co.*, 224 N. Y. 47, 120 N. E. 86, 88, 13 A. L. R. 875, Judge Cardoza said: "But even in jurisdictions where the liability is broader its bounds are the reasonable and the probable. The wrongdoer may be charged with those consequences and those only within the range of prudent foresight. *Milwaukee & St. Paul R. Co.* v. *Kellogg*, 94 U. S. 469, 474, 24 L. Ed. 256; *Webb* v. *R., W. & O. R. R. Co.*, 49 N. Y. 420, 10 Am. Rep. 389."

"You are not to trouble yourselves with distant causes."

Space itself is measured not only longitudinally but by conditions also. No one could for a moment successfully claim that liability would follow had this pole been built behind obstructions apparently insurmountable.

In *Milwaukee, etc., R. Co.* v. *Kellogg, supra,* the court said: "But it is generally held, that, in order to warrant a finding that negligence, or an act not amounting to wanton

wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

In *Fowlkes* v. *Southern Railway Co.*, 96 Va. 742, 32 S. E. 464, 465, Keith, P., quoting with approval from Shearman and Redfield on Negligence, section 29, said: "The practical solution of this question appears to us to be that a person guilty of negligence should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed (whether they could have been ascertained by reasonable diligence or not) would, at the time of the negligent act, have thought reasonably possible to follow, if they had occurred to his mind."

In *Va. Iron Coal, etc., Co.* v. *Kiser*, 105 Va. 695, 54 S. E. 889, 892, Judge Cardwell approves of this definition of proximate cause: "The first requisite of proximate cause is the doing or omitting to do an act which a person of ordinary prudence could foresee might naturally or probably produce the injury, and the second requisite is that it did produce it."

In *Clinchfield Coal Corp.* v. *Cruise's Adm'r*, 117 Va. 645, 86 S. E. 135, 138, Judge Kelly said: "* * * the defendant company cannot be held liable because it was not bound to foresee and provide against the unusual and improbable thing that occurred."

In *N. & W. Ry. Co.* v. *Whitehurst*, 125 Va. 260, 99 S. E. 568, 569, Judge Burks, speaking for the court, said: "The 'foreseeableness' or reasonable anticipation of the consequences of a wrongful or negligent act is not the measure of liability of the guilty party, though it may be determinative of the question of his negligence. When once it has been determined that the act is wrongful or negligent the guilty party is liable for all the consequences which naturally

flow therefrom, whether they were reasonably to have been anticipated or not, and in determining whether or not the consequences do naturally flow from the wrongful act or neglect, the case should be viewed retrospectively." See, also, *Judy* v. *Doyle*, 130 Va. 392, 108 S. E. 6, 10; *Washington & O. D. Ry.* v. *Weakley*, 140 Va. 796, 125 S. E. 672; *Overstreet* v. *Security, etc., Co.*, 148 Va. 306; 138 S. E. 552; and *Doss* v. *Big Stone Gap*, 145 Va. 520, 134 S. E. 563.

"The test of legal liability is not to be applied retrospectively" (*Cashell* v. *Southern Ry. Co.*, 152 Va. 335, 147 S. E. 209, 211), and when we look into the future not all of us are seers nor gifted with prevision.

Probable consequences are to be anticipated and not those which are merely possible.

"In accordance with the test of responsibility above set forth, it has been held in many cases that a wrongdoer is not responsible for a consequence which is merely possible, according to occasional experience, but only for a consequence which is probable, according to ordinary and usual experience. The natural and probable consequences are those which human foresight can foresee, because they happen so frequently that they may be expected to happen again. The possible consequences are those which happen so infrequently that they are not expected to happen again. A man's responsibility for his negligence must end somewhere. As has been well said: 'One is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what, as it is sometimes said, is only remotely and slightly probable.' " 22 R. C. L. 124.

The substance of it all, stated and restated in various ways, is that negligence carries with it liability for consequences which, in the light of attendant circumstances,

could reasonably have been anticipated by a prudent man, but not for casualties which, though possible, were wholly improbable. One is not charged with foreseeing that which could not be expected to happen.

It is true that the authorities cited do not deal directly with the violation of any statute, but the rule is the same unless that violation be wanton or unless the statute be one designed to protect some special class, like infants of tender years. *Miller Mfg. Co.* v. *Loving*, 125 Va. 255, 99 S. E. 591.

"A party suing for an injury arising from an act of a defendant, in violation of a statute, claiming damages, and not merely the penalty prescribed in the act, would have to allege and prove the same facts, which he would have to allege and prove if the act of negligence complained of was not in violation of a statute, * * *" *Hortenstein* v. *Virginia-Carolina Ry. Co., supra.*

In *Southern R. Co.* v. *Vaughan*, 118 Va. 692, 88 S. E. 305, L. R. A. 1916E, 1222, Ann. Cas. 1918D, 842, it appears that Vaughan was killed when driving a car for hire owned by the Virginia Transfer Company. It was being operated without a license and he had none. The court, over the protest of the railway, applied the law of proximate cause and sustained a recovery, saying that to do otherwise would be to violate a long established rule. There was no causal connection between the accident and the violated statute.

"This rule, universally applicable when a recovery is sought for breaches of common-law duties, is equally applicable where a recovery is sought for the breach of a statutory duty, unless the statute, expressly or by necessary implication, provides that a recovery may be had where damage occurs coincident with or following the violation of the statute though there be no causal connection between the violation of the statute and the damage which occurred." *Virginian Railway Co.* v. *Haley*, 156 Va. 350, 157 S. E. 776, 784.

"The general rule is that if a breach of a statute is relied upon by the plaintiff as a cause of action he must show not only that he is one of the class for whose benefit the statute created a duty, * * * but, also, that the breach of the statute is the proximate cause of the injury: * * * 'the question is, was the breach a *causa sina qua non*, a cause which, if it had not existed, the injury would not have taken place,' *. * * The doctrine held in some early cases, that a breach of statutory duty was evidence not only of negligence, but also that such negligence caused the injury complained of, is now abandoned." *Gilson* v. *Delaware Canal Co.*, note, 36 Am. St. Rep. 807, 817.

█ "* * * the rule, supported by the weight of authority, is that while one who violates a statute or an ordinance may be regarded as a wrong-doer, and the act regarded as negligence, still it may or may not be the proximate cause of the injury complained of according to the facts of the particular case. * * * It is generally held, and this we regard as the true doctrine, that the element of proximate cause must be established, and that it will not necessarily be presumed from the fact that an ordinance or statute has been violated. Negligence, no matter in what it consists, cannot create a right of action unless it is the proximate cause of the injury complained of by the plaintiff." 2 Elliott on Railroads (3d ed.) section 842, page 227.

█ Here the defendant was guilty of no wanton wrong. It placed its plans before the county surveyor and received his approval. The pole in judgment was planted so near the edge of the road that a part of it stood upon private property. To reach it Mr. Wyatt had to leave the pavement, cross the dirt shoulder, go into the ditch and up and upon its far bank. From whatever be the angle of approach, no one could in reason have anticipated that it

would be struck by an automobile, passing along the highway. This was the judgment of the trial court and is plainly right.

Plaintiff contends that this is a jury question. That is, generally speaking, true, but it is not always true.

In *Standard Oil Co.* v. *Roberts*, 130 Va. 532, 107 S. E. 838, 839, Judge Prentis, in commenting on *Southern R. Co.* v. *Rice*, 115 Va. 235, 78 S. E. 592, said: "That case clearly holds that if an act which is prohibited by city ordinance directly contributes to the injury as a proximate and concurring cause, then the plaintiff cannot recover. The jury is not permitted to decide whether or not the violation of an ordinance under such circumstances is negligence. Manifestly such a violation is negligence, and the jury should be clearly told so; leaving them to determine, *in proper cases*, whether, considering all the attendant circumstances, such negligent unlawful act of the plaintiff was a concurring, contributing and efficient cause of the injury." (Italics supplied.)

Where the facts are undisputed and conclusively shown, the burden of decision is thrown upon the court.

"\* \* \* Upon it (the court) was devolved the duty of determining in the first instance whether the facts offered in evidence tended to prove an injury to the plaintiff too remote from the defendant's act of negligence to constitute an element in the plaintiff's recovery." *Fowlkes* v. *Southern R. Co.*, 96 Va. 742, 32 S. E. 464, 466.

"The general doctrine is, that whether one has been guilty of negligence or not is a mixed question of law and fact, to be determined by the court when the facts are undisputed or conclusively proved, but not to be withdrawn from the jury when the facts are disputed or the evidence is conflicting." *Winchester* v. *Carroll*, 99 Va. 727, 40 S. E. 37, 40.

"It is the province of the court to determine in the first

instance whether or not the facts offered in evidence, tending to prove an injury to a plaintiff, are too remote from the defendant's act of negligence to constitute an element of the plaintiff's recovery." *Judy* v. *Doyle, supra.*

"We have carefully considered the principles upon which the law of public nuisances as to highways is based, because, 'what is a public nuisance is a question of law for the court, but the existence of facts which the court may declare sufficient to constitute a public nuisance is a question of fact for the jury.'" *Price* v. *Travis,* 149 Va. 536, 140 S. E. 644, 647, 56 A. L. R. 209; *Allison* v. *Fredericksburg,* 112 Va. 243, 71 S. E. 525, 48 L. R. A. (N. S.) 93.

Other Virginia cases might be cited but these are enough. They are in harmony with general law.

"It has been said to be the general rule that what is the proximate cause of an injury is ordinarily a question for the jury; the court instructing them as to what the law requires to constitute it, and the jury applying the law to the facts. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. But it is obvious that whether it will or will not be a question for the jury will depend on the facts of each case. Thus where the facts of the particular case are disputable, and are of such character that different minds might reasonably draw different conclusions therefrom, a question of fact is presented properly determinable by the jury. But when the facts are undisputed and are susceptible of but one inference, the question is one of law for the court. While ordinarily the answers to those questions would naturally fall within the province of the jury, and when made in their verdict would be regarded as binding, yet where the facts are. fairly incontrovertible the question of proximate or intervening cause is for the court." 22 R. C. L., page 148.

Here the facts are not in dispute and we may accept without reservation every line in plaintiff's evidence.

*Appalachian P. Co.* v. *Wilson,* 142 Va. 468, 129 S. E. 277, 280, is cited and relied upon to show that proximate cause is a jury question. There the obstruction which did the damage was a chestnut pole lying within the usable and used portion of the road, and within eighteen inches of the carriage track. Of course this obstruction was properly held to be the proximate cause of the accident. The court, in the course of its opinion, said: "* * * the defendant's negligence was the proximate cause of the injury if, as we think, it was natural and reasonable to expect it would result in such an injury."

This is but to say that unless the accident was naturally and reasonably to be expected plaintiff would have had no case. All of this was pre-eminently for the jury and properly submitted.

The court did, in the course of its decision, cite with approval this general statement of the law from *Williams* v. *San Francisco, etc., Ry. Co.,* 6 Cal. App. 715, 93 Pac. 122, 126: "And while, as between the town or county, or public authorities having supervision of public highways, and the traveler, the latter will leave the portion of the road laid out and prepared for the customary use and travel and go upon and use the unprepared and customarily unused part at his own risk, he is nevertheless entitled to the unobstructed and uninterrupted use of the entire width of the highway as against the unlawful acts of other persons, either real or artificial."

We have no criticism of that statement as applied to this case, for the defendant, in violating the statute, was negligent, but it does not follow that negligence was the efficient cause of the injury. Like all general rules, it is to be applied with caution. A stepping stone to facilitate access to carriages may be placed upon the edge of the sidewalk. *Richmond* v. *Lambert,* 111 Va. 174, 68 S. E. 276, 28 L. R. A. (N. S.) 380; *Richmond* v. *Jeter,* 149 Va. 235, 141 S. E. 260;

*Price* v. *Travis*, 149 Va. 536, 140 S. E. 644, 56 A. L. R. 209. *Robert* v. *Powell*, 168 N. Y. 411, 61 N. E. 699, 55 L. R. A; 775, 85 Am. St. Rep. 673. This last case was an action between individuals.

*Pacific Telephone & Telegraph Co.* v. *Hoffman* (C. C. A.), 208 Fed. 221, is also cited and relied upon.

There a guy wire, to steady a pole, was anchored on a roadway in the hollow of a curve thirty-one inches from its beaten and traveled track. The court said that the question as to whether or not a traveler might be expected to cut across it and strike this wire was a question for the jury. Of course it was.

Where fair-minded men may differ as to the facts or as to conclusions to be deduced therefrom, the case is for the jury, otherwise for the court. Upon it rests the burden of applying the law to facts undisputed and fully proven, a burden in this case properly assumed.

This pole was in the road and was placed there without the necessary statutory permit, and so was negligently placed, but its unlicensed location did not proximately contribute to plaintiff's hurt, nor is this affected by her abstract right to use the entire highway.

For reasons stated we are of opinion that this case should be affirmed, and it is so ordered.

*Affirmed.*