**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 05-1505**

TROY TESTERMAN,

Plaintiff - Appellant,

versus

RIDDELL, INCORPORATED,

Defendant - Appellee.

Appeal from the United States District Court for the Western District of Virginia, at Danville. Jackson L. Kiser, Senior District Judge. (CA-03-71-4)

Argued: December 1, 2005          Decided: January 6, 2006

Before LUTTIG and MICHAEL, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Richard Charles Armstrong, RICHMOND & FISHBURNE, Charlottesville, Virginia, for Appellant. John Michael Perry, Jr., EDMUNDS & WILLIAMS, P.C., Lynchburg, Virginia, for Appellee. **ON BRIEF:** Christine Thomson, RICHMOND & FISHBURNE, Charlottesville, Virginia, for Appellant. Henry M. Sackett, III, EDMUNDS & WILLIAMS, P.C., Lynchburg, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Troy Testerman badly injured his shoulder during a college football game. At the time Testerman was wearing shoulder pads made by Riddell, Inc. that were apparently selected for him by a Riddell employee. Testerman sued Riddell on the theory that under Virginia law the company negligently fit him with pads that were too small to protect him during the game. The district court excluded Testerman's primary expert witness, granted summary judgment in favor of Riddell, and declined to reconsider these decisions after Testerman learned that Riddell had failed to timely disclose in discovery an enhanced video of the injury. Testerman appeals these rulings, and we now affirm.

I.

Testerman was co-captain of the Averett University football team in Danville, Virginia. Riddell is an Illinois corporation that makes shoulder pads and football helmets. On August 31, 2002, Averett played in a scrimmage game against another team. Testerman caught a pass; as he ran with the ball at least three players hit him, and he fell to the ground, landing on his left side. Testerman suffered a severe fracture of his left scapula, or shoulder blade, requiring extensive surgery and physical therapy. The injury permanently limited his ability to move his arm fully and to lift heavy objects.

2

During the game Testerman was wearing Riddell "Power 34" shoulder pads. About two weeks before the scrimmage, a representative of Riddell, Christopher Williams, had fit some members of the Averett team with Riddell pads. Testerman alleged that Williams selected the pads and fit him for size. Although Williams could not recall fitting Testerman, Riddell stipulated to Williams's involvement for pre-trial purposes.

In August 2003 Testerman sued Riddell in the U.S. District Court for the Western District of Virginia, invoking diversity jurisdiction and alleging a negligence claim on the theory that Williams, Riddell's agent, carelessly fitted Testerman "with pads that were inadequate, inappropriate, [and] too small." J.A. 27-28. Testerman designated Kent Falb, a former head athletic trainer for the Detroit Lions, as its principal expert. (In opposing summary judgment Testerman also offered a rebuttal expert, Joe Gieck.) Falb relied on deposition transcripts, a videotape of the scrimmage provided by Averett, and his own "knowledge and experience with respect to the fitting and use of football pads and the injuries incurred in the game of football." J.A. 39. While Falb's expert report concluded that a blow from the back caused Testerman's scapula fracture, Falb later changed his mind and testified at his deposition that impacts to the front and side of the shoulder caused the injury.

Riddell designated two experts: P. D. Halstead, director of a sports biomechanics research lab at the University of Tennessee, and Chris Van Ee, who holds a Ph.D. in biomechanical engineering. Riddell enhanced the video image so that its experts had access to a slow motion depiction of the scrimmage, but Riddell did not provide the enhanced images to Testerman's counsel until the combined hearing on Riddell's motion in limine and motion for summary judgment.

The district court granted Riddell's motion in limine excluding Falb's expert testimony under Federal Rule of Evidence 702. The court concluded that Falb's testimony as to the cause of injury was unreliable and therefore inadmissible. After also excluding the testimony of Testerman's treating physician, the district court granted Riddell's motion for summary judgment on the ground that "[w]ithout the testimony of Falb and [the physician], Plaintiff cannot establish a prima facie case of proximate causation against Riddell." J.A. 577.

Testerman then moved for alteration or amendment of the judgment, offering a new affidavit from Falb based on a review of the enhanced videotape and excerpts of his deposition transcript not previously presented. Concluding that these new materials did not "account for new evidence not available at trial," the district court concluded that there was no reason to reconsider its judgment and denied the motion. J.A. 723-28. Testerman appeals. We apply

4

state substantive law and federal procedural law in this diversity case.  <u>Gasperini v. Ctr. for Humanities, Inc.</u>, 518 U.S. 415, 427 (1996).


II.

A.

Testerman's first contention is that the district court erroneously excluded his expert's testimony.  Federal Rule of Evidence 702, governing such testimony, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  The rule requires trial court judges to serve as gatekeepers for expert testimony and "ensure that any and all [such] testimony is not only relevant, but reliable," <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 589 (1993), but the focus of the inquiry "must be solely on principles and methodology, not on the conclusions that they generate."  <u>Id.</u> at 595; <u>see</u> <u>Cooper v. Smith & Nephew, Inc.</u>, 259 F.3d 194, 199 n.1 (4th Cir. 2001) (understanding the post-<u>Daubert</u> amendments to Rule 702 as leaving unaltered <u>Daubert</u>'s standard for assessing reliability).  District

court evidentiary decisions are reviewed for abuse of discretion. United States v. Forrest, 429 F.3d 73, 79 (4th Cir. 2005).

The district court identified three key questions that Falb was unable to answer definitively: (1) which blow caused Testerman's injury; (2) whether the area of impact was covered by the shoulder pad; and (3) whether the injury would have occurred, or would have been substantially mitigated, had Testerman been wearing different pads. Testerman argues that the district court improperly concentrated on Falb's conclusions rather than on the reliability of the methods Falb used to reach those conclusions.

We disagree. It is true that the district court viewed the videotape independently and cited the opinions of Riddell's expert Halstead in assessing Falb's reliability, but this analysis did not constitute impermissible weighing of evidence. Rather, the district court looked to the other evidence simply to identify a cause for Testerman's injury not attributable to Riddell. This evidence raised the prospect that Testerman was injured by a blow to an area that would have been unprotected even by correctly fitted pads. Such a blow could have come from either another player or from hitting the ground. Falb's methods for forming his opinion did not allow him to rule out this potential alternate cause with any degree of precision.

It was appropriate for the district court to concentrate on this weakness in Falb's methods as well as on the other problems

6

it enumerated when it held Falb's testimony to be inadmissible. Thus, the district court properly emphasized the unreliability of Falb's methods even though it looked to the conclusions those methods generated as evidence of unreliability. In granting Riddell's motion in limine to exclude Falb's testimony, the district court therefore did not abuse its discretion.

B.

Testerman's second contention is that the district court erred in granting summary judgment in Riddell's favor. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We review de novo a district court's grant of summary judgment. Sunrise Corp. v. City of Myrtle Beach, 420 F.3d 322, 327 (4th Cir. 2005). Although all justifiable inferences are drawn in favor of the party opposing summary judgment, "[c]onclusory or speculative allegations do not suffice" to create a genuine issue of material fact. Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (punctuation omitted).

The district court granted summary judgment to Riddell because "[w]ithout the testimony of [the experts], Plaintiff cannot

7

establish a prima facie case of proximate causation against Riddell
. . . . [T]here is no admissible evidence to support the crucial finding that the injury would not have occurred, or would have been less severe, had the pads been properly fitted." J.A. 577. We affirm because well-established Virginia tort law supports the district court's conclusion that Testerman could not prevail at trial without offering expert testimony on causation.

"[T]o warrant a finding that negligence . . . is the proximate cause of an injury, it must appear [(1)] that the injury was the natural and probable consequence of the negligence or wrongful act, and [(2)] that it ought to have been foreseen in the light of the attending circumstances." Wyatt v. Chesapeake & Potomac Tel. Co., 158 Va. 470, 477-78, 163 S.E. 370, 372 (1932). Satisfaction of the first component (but for, or factual causation) on summary judgment required Testerman to show that there was enough evidence for trial indicating that properly fitting pads would have absorbed enough of the force from his collision and fall to prevent or significantly reduce the damage to his shoulder. Since no witness observed the circumstances of the injury with sufficient detail, Testerman needed an expert witness to offer this evidence. But in building his affirmative case, he lacked such an expert once Falb was excluded. The district court was therefore correct in entering summary judgment for Riddell.

C.

Testerman's third contention is that the district court erred in denying his motion for relief under Federal Rule of Civil Procedure 59(e). Such relief may "be appropriate to account for new evidence not available at trial. In that circumstance a party must produce a legitimate justification for not presenting the evidence during the earlier proceeding." Small v. Hunt, 98 F.3d 789, 798 (4th Cir. 1996) (citations and punctuation omitted). We review the denial of a Rule 59(e) motion for abuse of discretion. United States ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002).

Preliminarily, we note that Riddell provided no explanation for its failure to disclose the existence of enhanced videotape before the hearing on the in limine and summary judgment motions. This failure meant that while Riddell's experts had timely access to the videotape, Testerman's expert did not. A report disclosing an expert's anticipated testimony to the opponent "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; [and] any exhibits to be used as a summary of or support for the opinions." Fed. R. Civ. P. 26(a)(2)(B). Here, a detailed description of the "data or other information" the expert considered would have demonstrated greater respect for the discovery process than a vague

9

description.  For example, Halstead's report should have explained that Halstead relied on numerous slow-motion and magnified images of the scrimmage, rather than simply saying that he used "[v]ideo of the injury play."  J.A. 163.

Although we do not condone Riddell's tardiness in producing the enhanced videotape, we are unable to conclude that the district court erred in declining to revisit its prior ruling. Rule 59(e) relief is rarely appropriate for a claimant who presents new evidence that, even if presented in the earlier proceeding, had no demonstrated probability of changing the outcome.  The affidavit Falb submitted on reviewing the enhanced videotape indicates that even if he had examined the videotape before the hearing, his conclusion about the precise cause of Testerman's injury would not have been affected.

In his affidavit Falb stated:  "In my opinion, the videotape prepared by the defense . . . does not have slow motion depictions of the blow which caused Mr. Testerman's injuries, as the slow motion portions of the videotape commence just after that blow occurred."  J.A. 587 ¶ 8.  This sentence is the only one in the affidavit that describes the significance of the enhanced videotape.  Nowhere does Falb declare that review of the videotape in any way affected the outcome of his reasoning.  Thus, the district court did not err because Testerman's motion did not point

10

to newly discovered evidence that would have justified altering or amending the judgment.

The judgment is affirmed.

<u>AFFIRMED</u>