Statement.

# Wytheville.

WINFREE v. JONES.

June 15, 1905.

Absent, Cardwell, J.

1. BANKRUPTCY—*Provable Debts—Liability for Torts.*—A claim for damages for negligently permitting plaintiff's house to be destroyed while in the possession of the defendant as tenant is not a provable debt under the acts of Congress relating to bankruptcy, and hence a discharge in bankruptcy is no answer to an action to recover such damages. Liabilities arising purely *ex delicto* are not provable under said acts.

2. PROXIMATE CAUSE—*Natural and Probable Result.*—The law always refers an injury to the proximate, not to the remote cause. To warrant the finding that an act of mere negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence, and that it ought to have been foreseen in the light of the attending circumstances.

3. DAMAGES—*Proximate Cause—When a Question for Jury—When for Court—Case at Bar.*—When there is doubt as to what damages should be considered as flowing, in a natural and continuous sequence, from an act of negligence, the question should be left to the jury, but leaving the upstairs door of an empty house unlocked is so manifestly not the proximate cause of the subsequent burning of the house by some one who had no legal right there, but who obtained access by reason of the unlocked door, that the court may so declare as a matter of law.

Error to a judgment of the Corporation Court of the city of Newport News in an action of Trespass on the Case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Jno. W. Friend,* for the plaintiff in error.

*C. C. Berkeley* and *C. C. Mitchell,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

M. B. Jones, the plaintiff in the court below, brought this action to recover damages of the defendant, W. B. Winfree, for having, as alleged, negligently permitted a certain house to be burned while it was in his possession as tenant to the plaintiff, by abandoning it and leaving it unlocked so that it was wrongfully entered, burned, and destroyed.

There was a verdict of $300 for the plaintiff, upon which judgment was entered by the lower court, and thereupon this writ of error was awarded.

The first error assigned is the action of the lower court in rejecting a plea of bankruptcy tendered by the defendant.

The discharge, which was obtained October 23, 1903, on its face releases the defendant from liability for all claims which are made provable by the acts of Congress relating to bankruptcy. The question presented, therefore, is, whether the claim here asserted was provable under the acts of Congress relating to bankruptcy.

It is to be observed that the claim is for unliquidated damages, and arises *ex delicto.* The act of Congress has been construed, with respect to such claims, by the Federal courts adversely to the right to prove them. *Beers* v. *Hanlin* (D. C.), 99 Fed. Rep. 695; *In re Hirschman* (D. C.), 104 Fed. Rep. 69.

In the case last cited, after a well considered discussion of the entire subject, pointing out the several classes of claims that are provable under the act of Congress, the court says: "The care

used to particularize various provable debts in sub-section "a" negatives the extended construction of sub-section "b" urged by petitioners. If the latter sub-section authorizes the liquidation and subsequent proof of damage *ex delicto,* the whole subject could have been covered in very general language. Assuming petitioner's construction of section 63, sub-section "b," it would embrace claims arising from any tort. There is no language in the section which can be held to include some, and not all, torts. Yet the general policy of bankrupt acts has been not to include in provable debts claims for damages for personal wrongs. It is hardly possible, if Congress had intended such a departure from the history of bankrupt legislation, that it should not have expressed the intent unmistakably." After showing the necessity for the petitioners bringing themselves under section 63, sub-section "a" in order to prove their claims, the court says: "section 63, sub-section 'a' does not authorize the proof of any claim arising *ex delicto,* unless a recovery may be had *quasi ex contractu.*"

This case is conclusive of the question at bar. The plaintiff could not have waived the tort and sued *ex contractu.* His claim rested entirely in tort. There was no contract of renting with covenant thereunder upon which he could have based an action *ex contractu.*

In the view we take of the merits of this case, the only remaining assignment of error necessary to be considered is that which relates to the action of the court in refusing to set aside the verdict of the jury as contrary to the law and the evidence.

It appears from the record that early in July, 1901, the plaintiff rented the house in question, situated in a negro community known as "Klondike," to the defendant for one year from July 10, 1901; that the defendant remained in the house until the 8th or 9th of December, 1901, when he moved out,

leaving the door of the upstairs which opened on a porch connected by steps with the street below, unlocked and insecure, that when the defendant moved out, the plaintiff, on the 10th of December, 1901, sued out an attachment against him and recovered, December 26, 1901, judgment for $280 and costs, covering the rent to accrue for the whole year up to July 10, 1902, which judgment was subsequently paid by the defendant; that on the 30th or 31st of December, 1901, about midnight, the house was burned and totally destroyed; the fire breaking out in the rear part of the second floor of the building, the entrance to which was through the door opening on the upper porch which had been left unlocked. It was agreed that two negroes would testify that several times prior to the fire a negro known as "Big Jim" was seen passing in and out of the upstairs of the house, and loafing about a bar-room on the opposite side of the street during the afternoon of the day proceeding the fire, and that one witness would testify that a large man, whether white or black, not known, was seen running down the steps from the upstairs of the house just after the fire appeared in the part of the building where the door and windows entered. It is proper to say that the record furnishes no pretense or suggestion that the defendant had anything to do with the burning of the building other than the alleged negligence of leaving the door unlocked. The record shows that the plaintiff knew that the defendant had abandoned the house; indeed, as already seen, he took steps the next day to recover the rent for the entire year. So that the case presented by the plaintiff is that it was negligent in the defendant to leave the upstairs door of the house unlocked when he abandoned it on the 8th or 9th of December, 1901, thereby making it possible for any one to enter the house and set it on fire, and that for such negligence the defendant must respond in damages for the loss of the house by fire on the 30th or 31st of December, 1901.

In considering the liability of the defendant under the circumstances mentioned, the question arises upon the threshold of that inquiry, was the act of the defendant in leaving the door of the house unlocked on the 9th of December the proximate cause of the fire which destroyed the house on the 30th of that month?

"The rule of law excluding a recovery for remote consequences has been attributed by some to the difficulty of unravelling a combination of causes, and of tracing each result, as a matter of fact, to its true, real, and efficient cause. It has also been said that the law considers only proximate causes for the reason that remote or speculative considerations would not afford a sufficient degree of certainty for judicial action. But in addition to this, considerations of fairness and justice require that no one should be held liable for the consequences of an act innocent in itself, and conceived without mischievous intent, which, by the concurrence of some event that could not by any possibility have been foreseen, has produced hurtful consequences to another." *Watson on Damages,* section 35.

The same author says, that the injury must have been the proximate and natural consequences of such act; and that in this connection the term "proximate" excludes the notion of the intervention of any other culpable and efficient agency between the defendant's dereliction and the loss. Section 33 of the same work is as follows: "A natural consequence is one which has followed from the original act complained of in the usual, ordinary, and experienced course of events. A result, therefore, which might reasonably have been anticipated or expected. Natural consequences, however, do not necessarily include all such as upon a calculation of chances would be found possible of occurrence or such as extreme prudence might anticipate, but only those which ensue from the original act without any

such extraordinary coincidence or conjunction of circumstances as that the usual course of nature should seem to have been departed from."

These principles have been fully sustained and applied by this court. *Connell* v. *C. & O. Ry. Co.*, 93 Va. 57, 24 S. E. 467, 32 L. R. A. 792, 57 Am. St. 786; *Fowlkes* v. *Southern Ry. Co.*, 96 Va. 742, 32 S. E. 464; *Watts* v. *So. Bell Telephone Co.*, 100 Va. 45, 40 S. E. 107; *Standard Oil Co.* v. *Wakefield*, 102 Va. 824, 47 S. E. 830, 66 L. R. A. 792.

In *Connell* v. *C. & O. Ry. Co.*, *supra*, it is said, quoting from an opinion of Justice Miller of the Supreme Court, that "to warrant the finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

And in the case of *Fowlkes* v. *Southern Ry. Co.*, *supra*, where the subject is quite fully considered, this court says: "It is not only requisite that damage, actual or inferential, should be suffered, but this damage must be the legitimate sequence of the thing amiss. The maxim of the law here applicable is that in law the immediate and not the remote cause of any event is regarded. . . . In other words, the law always refers the injury to the proximate, not to the remote cause. . . . If an injury has resulted in consequence of a certain wrongful act or omission, but only through or by means of some intervening cause, from which last cause the injury followed as a direct and immediate consequence, the law will refer the damage to the last or proximate cause, and refuse to trace it to that which was more remote. . . . To the proximate cause we may usually trace the consequences with some degree of assurance; but beyond that we enter a field of conjecture, where the uncertainty renders the

attempt at exact conclusions futile. . . . If the wrong and the resulting damage are not known by common experience to be naturally and usually in sequence, and the damage does not, according to the ordinary course of events, follow from the wrong, then the wrong and the damage are not sufficiently conjoined or concatenated as cause and effect to support an action."

The case at bar comes clearly within the influence of the principles to which we have adverted, and when they are applied to the facts here shown it would seem to be manifest that the alleged negligence and the damage complained of are not sufficiently conjoined to support the plaintiff's action. To the credit of the civilization in which we live it cannot be maintained that the natural and expected result of leaving the upstairs door of an empty house unlocked is, that some one who has no legal right there will enter the house and burn it, even though the house be located in a negro community.

The house was entered and burned by some one unknown to the plaintiff three weeks after it was vacated, a result which cannot be said to have followed the act of alleged negligence, in the usual, ordinary, and experienced course of events. On the contrary, such a result could not reasonably have been anticipated or expected.

This act was clearly the culpable and efficient intervening and proximate course of the damage, and such damage cannot be said to be the legitimate sequence of the alleged negligence of the defendant. The injury complained of was the direct and immediate consequence of the act of the unknown party in setting fire to the house and the damage cannot, under the law, be traced to the remote negligence of leaving the door unfastened. Considerations of fairness and justice require that no one should be held liable for the consequence of an act innocent in itself,

and committed without mischievous intent, which, by the con-
currence of some event that could not reasonably have been an-
ticipated, has produced hurtful consequences to another.

It is often difficult to determine what damages should be con-
sidered as flowing, in a natural and continuous sequence, from.
an act of negligence, and where there is doubt it is a question for
the jury. In the case at bar, however, the question is so entirely
free from doubt that the court can, as a matter of law, declare
that the negligence alleged was not the proximate cause of the
injury, reparation for which is here sought in damages. It is,
therefore, unnecessary to consider the instructions and the ques-
tions discussed in connection therewith, for under no instruc-
tions would a recovery by the plaintiff be justified under the
facts of this case.

For these reasons the judgment complained of must be
reversed, the verdict of the jury set aside, and the case remanded
for further proceedings not in conflict with the views expressed
in this opinion.

*Reversed.*