# Richmond

## John W. Scott, Jr., et al. v. L. F. Simms, Admr., etc.

January 10, 1949.

Record No. 3409.

Present, Hudgins, C. J., and Gregory, Eggleston, Buchanan, Staples and Miller, JJ.

*Robert Lewis Young, Hiden, Bickers & Button* and *John B. Browder,* for the plaintiffs in error.

*Parrish, Butcher & Parrish, Thomas M. Miller, Edwin H. Gibson* and *S. M. Nottingham,* for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

Alva Rose Simms, a girl about nine years old, was killed following a collision between a truck driven by John W. Scott, Jr., and owned by his father, and a Ford automobile driven by Carroll Brown, which occurred behind a Buick automobile alleged to have been illegally parked by its driver, William Francis Hudson.

Her administrator sued the Scotts, Brown and Hudson, alleging that the death of the child was caused by their concurring negligence. The jury returned a verdict against all three defendants. The court entered judgment thereon against the Scotts and Brown, but set aside the verdict against Hudson and entered judgment in his favor.

This writ of error was granted to the Scotts and raises only the question of the correctness of the ruling of the court in setting aside the verdict against Hudson, the driver of the Buick. The judgment against the Scotts and Brown has become final and establishes that they were guilty of negligence which proximately contributed to the death of the child. The question for determination now is whether Hudson was also guilty of negligence, and if so, whether that negligence proximately contributed to the accident.

The accident occurred about five o'clock in the afternoon, at the intersection of Main and Scanlon streets, in the town of Culpeper. Main street, which is 45 feet 2 inches wide, runs north and south. Scanlon street, which is 22 feet 10 inches wide, runs east and west across Main street at right angles. Scott drove his truck south on Main street through the intersection and collided with the Ford, which

was then being driven by Brown on Scanlon street across the intersection from east to west. The truck struck the Ford about its right rear wheel. The force of the blow knocked the rear end of the Ford around clockwise, causing it either to strike the child or to crush her between the rear bumper of the Ford and the rear bumper of the Buick.

Some fifteen minutes before the accident, this Buick had been parked by Hudson at the curb on the west side of Main street, facing south, at the southwest corner of the intersection, so that its rear end extended four feet beyond the end of the curb of Main street and into the intersection. The end of this curb is at the beginning of a low retaining wall, which extends from that point west along the south edge of Scanlon street, is a few inches high at the end of the Main street curb, and gradually increases to about four feet high as it extends back west along the south side of Scanlon. This wall serves as a retaining wall for the yard of the Hitt apartment house, which is located at the southwest corner of this intersection. The sidewalk and curb along the west side of Main street stop at the intersection about even with the Main street end of this retaining wall.

When Hudson parked his Buick car in front of the Hitt apartments, there were two other cars parked against the curb in front of his car and he pulled up as close as he could to the car immediately in front of him. Just prior to the accident the little Simms girl, Rose, was playing with her friend, Betty Preston, in front of the Hitt apartments. Betty had been at Rose's home earlier that afternoon and they had come back to the Hitt apartments where Rose had left her shoes, and Rose had started back home when the accident happened.

Hudson contends that the record does not show where Rose lived, and that, therefore, it could not be said where she was going when she was struck. However, it is alleged in the notice of motion that she lived on Scanlon street, east of Main, and when Betty was asked where Rose lived, the court stopped her and stated there was no dispute as to where she lived, and asked of counsel if that was not

agreed. One of counsel assented, none objected, and apparently it was accepted as a fact that she lived on Scanlon, east of Main street. The effect of Betty's testimony is that Rose left her and went behind the Buick car intending to go across Main street, and was there waiting for the cars to go by when struck. Betty was asked,

"Q. Why did she go behind the car, do you know?

"A. No, sir.

"Q. Could you get across the street without going behind the car?

"A. Not across Main Street.

"Q. Could not get across Main Street without going behind this car?

"A. I mean she could not see the cars."

Robert Kemp, riding in the cab of the Scott truck with his head out the window on the right, testified he saw this little girl standing behind the Buick car, looking and waiting for traffic to go by. Cars were then parked all along on Main street on both sides, and traffic on the street was heavy; there was a continual stream of cars going south at the time.

A witness on the opposite side of Main street heard the crash. As he looked, the Ford was headed north, appeared to be moving backwards, then it bounced or moved forward and stopped. When it stopped its rear bumper was two feet two inches from the rear bumper of the Buick. There was a mark on the Buick bumper and "it looked as though the little girl had been between whatever smashed her," and when it was over Rose was lying in the street just behind the Buick about opposite its right rear wheel.

Mrs. McCoy was walking on Scanlon east toward Main. She heard the horn on the truck blowing as it came down Main before she could see anything, because cars were parked all along on the west side of Main. She said she saw the Ford swerve around and hit this child; that when it hit her it threw her around and up in the air. Her injuries were on her left side.

An ordinance of the town of Culpeper provides that "No

vehicle shall be stopped in such manner as to impede or interfere with, or render dangerous the use of streets by others;" nor "in such manner as to block or obstruct the orderly and lawful passage of other traffic, nor upon any crossing, * * *."

If Hudson violated this ordinance he was guilty of negligence. *Standard Oil Co.* v. *Roberts,* 130 Va. 532, 107 S. E. 838; *Powell* v. *Virginian Ry. Co.,* 187 Va. 384, 46 S. E. (2d) 429. It is clear enough that the parking violated the ordinance in more than one particular. Parking an automobile at a street corner so that four feet of it sticks out into one of the intersecting streets certainly may be said to interfere with, or render dangerous, the use of the intersecting street by others, as well as obstruct the orderly and lawful passage of other traffic, besides causing it to be upon the crossing. It is argued for Hudson that the evidence does not show that four feet north of and beyond the junction of the Main street curb and the retaining wall along the south side of Scanlon reaches into the intersection or the traveled part of Scanlon street. There was positive evidence to the contrary; that Scanlon street on the north side begins at the curb and extends south "to the extent of the traveled portion which comes up to the corner of the curb where the curb terminates on Main Street, on the south-west corner of the curb." Also a photograph in evidence so indicates.

The real and troublesome question in the case is whether this negligence of Hudson in parking the Buick was a proximate cause of the accident; that is, whether there was causal connection between his negligence and the accident, or whether the negligence of the driver of the truck and of the driver of the Ford was an intervening and superseding cause, which became the sole proximate cause of the death of the little girl. When the jury first returned their verdict they undertook, contrary to the court's instruction, to apportion the blame 50% to Brown, 40% to Scott and 10% to Hudson. They were sent back to reconsider and returned their verdict to include Hudson jointly with the other two defendants.

■ The question of proximate cause, or whether there is causal connection between negligence and accident, is a question of fact. Its existence or non-existence becomes a question of law only when the evidence is such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from it. *Stine* v. *Union Elec. Co.*, 305 Ill. App. 37, 26 N. E. (2d) 433.

"Whether there is causal connection between a defendant's negligence and a plaintiff's injuries is usually a question for the jury. It is only when men of reasonable minds may not fairly differ on the proper inferences to be drawn from the facts proved that it becomes a question of law for the court." *Edgerton* v. *Norfolk Southern Bus Corp.*, 187 Va. 642, 653, 47 S. E. (2d) 409, 415, and cases cited.

When questions of fact are to be ascertained from evidence, there are cases in which the state of the evidence is such that the absence of proximate cause is so apparent that the court is required so to hold as matter of law, as in *Wyatt* v. *Chesapeake, etc., Tel. Co.*, 158 Va. 470, 163 S. E. 370, 82 A. L. R. 386; and there are cases where the presence of proximate cause is so demonstrated by the evidence that it exists as matter of law, as in *Schools* v. *Walker*, 187 Va. 619, 47 S. E. (2d) 418. The cases that fall between those two classes are within the province of the jury. There is no yardstick by which every case may be measured and fitted into its proper place. In each case the problem is to be solved upon mixed considerations of logic, common sense, justice, policy and precedent. Authorities are useful to furnish illustrations "of situations which judicious men upon careful consideration have adjudged to be on one side of the line or the other." 1 Street, Foundations of Legal Liability, 110; 25 Harvard Law Review at p. 308.[1]

■ A frequently quoted definition of proximate cause is that it is a cause " 'which, in natural and continuous

---

[1] For interesting discussions of proximate cause, see "Legal Cause in Actions of Tort" by Jeremiah Smith, 25 Harvard Law Review at pp. 103, 223 and 303; and "The Proximate Consequences of an Act" by Joseph H. Beale, 33 Harvard Law Review at p. 633.

sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred.'" *Wallace* v. *Jones*, 168 Va. 38, 42, 190 S. E. 82, 84.

"* * * But it is generally held that, in order to warrant a finding that negligence, or any act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. * * *" *Milwaukee, etc., R. Co.* v. *Kellogg*, 94 U. S. 469, 24 L. Ed. 256, 259; *Wyatt* v. *Chesapeake, etc., Tel. Co., supra*.

As said by the late Chief Justice Holt in *Wyatt* v. *Chesapeake, etc., Tel. Co., supra*, "negligence carries with it liability for consequences which, in the light of attendant circumstances, could reasonably have been anticipated by a prudent man, but not for casualties which, though possible, were wholly improbable. One is not charged with foreseeing that which could not be expected to happen." (158 Va. at pp. 479-80, 163 S. E. at p. 373).

But an intervening cause relied upon as interrupting the sequence of events following a negligent act must not itself be a happening that ought to have been foreseen. "An intervening cause will not be deemed to have broken the causal connection if the intervening cause was foreseen or reasonably might have been foreseen by the wrongdoer." *Jefferson Hospital* v. *Van Lear*, 186 Va. 74, 82, 41 S. E. (2d) 441, 444.

"* * * To be a superseding cause, whether intelligent or not, it must so entirely supersede the operation of the defendant's negligence, that it alone, without the defendant's contributing negligence thereto in the slightest degree, produces the injury. * * *" *Richmond* v. *Gay,* 103 Va. 320, 324, 49 S. E. 482, 483; *Appalachian Power Co.* v. *Wilson*, 142 Va. 468, 480, 129 S. E. 277, 281.

In order for the defendant's negligence to be a proximate cause of the injury, it is not necessary that the defend-

ant should have foreseen the precise injury that happened. It is sufficient if an ordinary, careful and prudent person ought, under the circumstances, to have foreseen that an injury might probably result from the negligent act. *Tripp v. Norfolk*, 129 Va. 566, 106 S. E. 360; *Price v. Burton*, 155 Va. 229, 154 S. E. 499; 25 Harvard Law Review, p. 238.

As was said in *Judy v. Doyle*, 130 Va. 392, 402-3, 108 S. E. 6, 9, "Doubtless the defendant, when he parked his car, did not anticipate the concurrence of circumstances which resulted in the injuries suffered by the plaintiff, but if this act of his was a negligent one, and in our judgment it was, the defendant's liability does not depend upon his ability to foresee the ensuing circumstances in precise detail."

Tested by these general rules, we conclude that the fair inferences from the evidence are not so free of doubt as to permit the court to decide as a matter of law that there was no causal connection between the negligence of the defendant, Hudson, and the injury.

There was evidence from which the jury could conclude that Rose intended to cross Main street, west to east from the southwest corner of the intersection, where she had just quit playing with her friend; that except for the presence of the parked car she could have stood on the sidewalk anywhere in the space from the corner to the next parked car and there in safety have looked and waited for the passing traffic; that because the Buick car was parked there she had to go behind it several feet into the intersection of Scanlon and Main in order to look for approaching traffic and wait for it to go by; that the negligence of the defendant, therefore, forced her from a place of safety into a place of danger—a place where she might be struck by a car passing into the intersection from west Scanlon street as she looked ahead into Main, or where she might be injured by colliding cars, as happened here, because such collisions are not extraordinary occurrences at the intersection of busy thoroughfares. Towns and cities usually have ordinances with a view to lessening the chances of such happenings.

The jury could also have fairly inferred from the evidence that if the child had not been prevented by the parked car from proceeding straight across Main street she would not have been struck by the Ford as it was forced around clockwise from the blow of the truck; certainly that she would not have been crushed between the rear of the Ford and the rear of the Buick if the latter had not been parked there. In view of these permissible inferences, the negligence of the other two co-defendants resulting in the collision was not a superseding cause, but a concurring cause, combining with the continuing negligence of defendant Hudson, to produce the result. Hudson's negligence had not at the time of the collision become inactive, but continued to be a condition operating harmfully with the negligence of his co-defendants.

"If the defendant's active force has come to rest, but in a dangerous position, creating a new or increasing an existing risk or loss, and the foreseen danger comes to pass, operating harmfully on the condition created by defendant and causing the risked loss, we say that the injury thereby created is a proximate consequence of the defendant's act." 33 Harvard Law Review, p. 650.

"* * * In the nature of things, there is in every transaction a succession of events, more or less dependent upon those preceding, and it is the province of a jury to look at this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies, and this must be determined in view of the circumstances existing at the time." *Milwaukee, etc., R. Co.* v. *Kellogg, supra,* 24 L. Ed. at p. 259.

In *Milbury* v. *Turner Centre System,* 274 Mass. 358, 174 N. E. 471, 73 A. L. R. 1070, a truck was parked at an intersection in violation of an ordinance. Its front extended about half way of a sidewalk of the intersecting street to its right. A five-year old boy passed in front of the truck and started across the street on which the truck was parked and was hit by a passing car. It was held that the ordi-

nance related directly to the safety of persons using and passing street corners and sought to keep them clear in order that those using either the sidewalk or the way for vehicles might see the existing traffic in an intersecting street, as well as in the street that they were using, and act with full knowledge of conditions; that a collision might well be found to be something not unusual and unlikely to happen as a result of such blocking of a corner, but rather a consequence naturally to be expected, and it was a question for the jury to decide.

It is not necessary to review the great number of our own decisions and undertake to point out the distinguishing features of those in which a contrary conclusion was reached. Each case must stand on its own facts. *Norfolk, etc., R. Co.* v. *Whitehurst*, 125 Va. 260, 263, 99 S. E. 568, 569.[2]

Defendant Hudson assigns as cross-error the giving of plaintiffs' Instruction No. 5, which told the jury that parking an automobile within the "traveled parts of street intersections in the Town of Culpeper" was negligence, and that if Hudson parked his car "within the traveled pathway of Scanlon Street," and thereby proximately caused or contributed to the death of the child, they should find for the plaintiff against Hudson.

The objections are: (1) That no mention is made in the ordinance about its being unlawful to park in the

[2] The conclusion here reached, however, that the question of proximate cause was for the jury, finds support in these cases, among others: *Houston* v. *Strickland*, 184 Va. 994, 37 S. E. (2d) 64, 165 A. L. R. 537 (the negligence of a bus company in putting a passenger off the bus was a proximate cause of his being killed on the road by a motor vehicle less than an hour later); *Clay* v. *Bishop*, 182 Va. 746, 30 S. E. (2d) 585 (assuming it was negligence under the statute for the plaintiff's intestate to lead a horse along the right-hand side of the road, it was for the jury to say whether that was a remote cause of his being struck and killed by a truck); *Powell* v. *Virginian Ry. Co.*, *supra*, 187 Va. 384, 46 S. E. (2d) 429 (whether the negligence of the plaintiff in driving to the left of the center of the road was a proximate cause of his collision with a railroad car placed on that side of the road); *Winsky* v. *De Mandel*, 204 Cal. 107, 266 P. 534; *Kuba* v. *Nagel* (Mo. App.), 124 S. W. (2d) 597; *Morrison* v. *Medaglia*, 287 Mass. 46, 191 N. E. 133; *Marchl* v. *Dowling & Co.*, 157 Pa. Super. 91, 41 A. (2d) 427; *Takako Inai* v. *Ede*, 42 Cal. App. (2d) 521, 109 P. (2d) 400.

traveled pathway of Scanlon street; and (2) that the evidence does not show that the car was so parked or what part of Scanlon constituted its traveled pathway.

On the second point the defendant argues that Scanlon street east of Main has a curbing denoting a sidewalk, while Scanlon, west of Main, has no curbing north of the retaining wall, and if the line of the curbing on the east be projected across Main and along the south side of Scanlon west of Main, that line would be four feet nine inches north of the retaining wall, and that according to *Stine* v. *Union Elec. Co., supra* (305 Ill. App. 37, 26 N. E. (2d) 433), that four feet nine inches must be considered a sidewalk. That case was construing words in an Illinois statute and has no application to the facts of this case where there is affirmative evidence that the traveled part of the street comes up to the curb on Main street, as we have pointed out.

While the ordinance of the town does not use the words "traveled pathway," the evidence showed the Buick was in fact parked in the traveled pathway, and it was proper for the court to instruct the jury that such parking was negligence, because it violated the prohibitions of the ordinance quoted above.

We hold the court did not err in giving this instruction; but so much of the judgment as sets aside the verdict against the defendant, Hudson, is reversed, that verdict is reinstated and final judgment entered thereon in favor of the plaintiff.

*Reversed in part and final judgment.*