## Richmond

RUTH TULLOCK v. CHARLES B. HOOPS.

November 29, 1965.

Record No. 6035.

Present, All the Justices.

*Carl C. Gillespie* (*Gillespie & Gillespie*, on brief), for the plaintiff in error.

*John W. Gillespie* (*Jack P. Chambers*, on brief), for the defendant in error.

Snead, J., delivered the opinion of the court.

Charles B. Hoops, plaintiff, filed a motion for judgment against Ruth Tullock, defendant, to recover $100,000 for personal injuries, property damage and other losses he allegedly sustained as a result of a collision between a tractor-trailer owned and operated by him and an automobile owned and operated by defendant. The jury returned a verdict for plaintiff in the sum of $30,000. The trial court overruled defendant's motion to set aside the verdict and entered judgment in accordance with the verdict. Defendant is here upon a writ of error and supersedeas awarded her.

The motion for judgment alleged that as a result of the careless and negligent manner in which defendant operated her vehicle "plaintiff has suffered damage to his property in the amount of Five Thousand Six Hundred Twenty Five and no/100 ($5,625.00) Dollars, hospital and doctor bills of approximately Four Hundred and no/100 ($400.00) Dollars, loss of earnings and wages of Four Thousand and no/100 ($4,000.00) Dollars, and that he has been permanently injured and has been deprived of the opportunity to work and earn a livlihood (sic) for himself and his family from the date of said accident to the present * * *".

Defendant filed interrogatories requesting plaintiff to furnish her an itemized statement of his medical expenses, loss of wages and earnings "and other special damages claimed to have been suffered" by him. Plaintiff's answer to the interrogatories stated in part:

"4.   Special damages claimed by plaintiff to date are:

* * * * *

"c.  Estimated loss on repossession            $6,750.00
      of 1960 trailer
"d.  Estimated loss on repossession             4,500.00
      of 1961 trailer
"e.  Estimated loss on repossession             8,000.00
      of 1956 rebuilt tractor

* * * * *"

At the beginning of the trial the court overruled defendant's motion to exclude evidence of plaintiff's alleged losses incurred by reason of the repossession of the tractor and two trailers mentioned above which motion had been made on the grounds that such damages were not claimed in the motion for judgment and further that such damages were too remote and not a proximate result of the accident. The

1956 tractor and the 1960 trailer were not involved in the accident. The 1961 trailer was involved but not damaged. Defendant subsequently made similar motions and objections at appropriate times during the trial predicated upon the same grounds offered in support of her original motion to exclude evidence of damages resulting from the repossession of the tractor and trailers, but all were overruled. Timely exceptions were taken to the court's rulings.

The mishap occurred on August 29, 1963, at about 4:30 p.m. on State Route 631 between Tazewell and Richlands. At the scene the roadway is straight, 17 feet 9 inches wide, blacktopped and consists of one eastbound lane and one westbound lane. On each side of the highway there is a shoulder approximately 2 feet wide. There is a slight dip in the road and from this point the road rises gradually for about four-tenths of a mile to the west and one-tenth of a mile to the east. At the time of the collision there was a "little drizzle" of rain and the roadway was wet.

Charles B. Hoops, the plaintiff, was operating a 1951 GMC tractor which was drawing a 1961 Fruehauf dump trailer loaded with twelve tons of sand in a westerly direction at a speed of about 35 miles an hour. As he came over the rise and started down into the dip he observed an elderly gentleman 300 feet ahead walking with two canes westwardly in the eastbound lane about 2 feet from the shoulder of the road. At the same time defendant's car was approaching plaintiff's vehicle in the eastbound lane between 300 and 400 feet away at an estimated speed of 35 miles an hour.

Plaintiff testified that defendant's car began to "give and sway" and go "across the road, zig-zagging"; that he switched his lights on and off so that defendant "would see me coming for sure", but when defendant made "the second run" into his lane of travel he drove his tractor-trailer over to the right and into a ditch "to give her all the road I could"; and that his tractor-trailer had traveled approximately 60 feet beyond the pedestrian and had stopped in the ditch when the two vehicles collided head-on.

Ruth Tullock, the defendant, testified that she was "a little over one hundred feet" from the pedestrian when she first saw him "right in the middle of my lane." She could not recall whether she saw plaintiff's approaching vehicle before she saw the pedestrian, but stated that when she first noticed the tractor-trailer it "was coming right below" the pedestrian. She applied her brakes, but her car "went into a slide" and she lost control of it.

As a result of the collision both drivers were hospitalized. Plaintiff sustained a back injury. He testified that he had not worked or received any income since his injury. According to Dr. Tillou Henderson, plaintiff has a "twenty to thirty percent general disability."

Plaintiff was engaged in the business of hauling coal and sand. The equipment used in connection with his business consisted of two GMC tractors (1951 and 1956) and two Fruehauf trailers (1960 and 1961). He acquired this equipment by purchasing it under conditional sale contracts. At the time of the accident there was a substantial unpaid balance on the three vehicles involved herein, and plaintiff was several months in arrears in his payments. In October, 1963, about a month after the collision, the 1956 tractor and the two trailers were repossessed by the holders of the conditional sale contracts.

Defendant's assignments of error present essentially these questions for our determination: (1) Were plaintiff's alleged losses by reason of the repossession of the tractor and two trailers, which were either not damaged or not involved in the accident, proper elements of damage and recoverable in this action? and (2) Did the court err in granting paragraph 9 of Instruction No. 3 and in refusing to grant Instruction No. C-1?

Defendant claims that the trial court erred in admitting, over her objection, evidence as to alleged damages resulting from the repossession of the tractor and two trailers, which were either not damaged or not involved in the accident, because such losses were a remote and not a proximate result of the collision. Plaintiff, on the other hand, says that the damages he sustained on account of the repossessions were a proximate and necessary result of the injuries he received in the accident and were therfore recoverable.

In 5 M.J., Damages, § 9, pp. 497, 498 it is said:

"'* * * It may be stated as a general rule that damages will be given only for the reasonable and proximate, and not for the remote, consequences of a breach of duty. The law does not hold a person responsible in damages for the remote consequences of his act, but only for those which are natural and proximate and necessarily result from the wrongful act. In other words, a man guilty of negligence is not responsible for all the consequences that may or do flow therefrom, but only for such consequences as a prudent and experienced man, fully acquainted with all the circumstances which in fact exist at that moment, could have foreseen or reasonably antic-

ipated." See also *Fowlkes* v. *Southern R. Co.*, 96 Va. 742, 32 S.E. 464; 22 Am. Jur. 2d, Damages, § 21, p. 39 and § 81, pp. 115-117.

" '* * * The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred.' " *Wallace* v. *Jones*, 168 Va. 38, 42, 190 S.E. 82.

In *Wyatt* v. *Telephone Company*, 158 Va. 470, 479, 480, 163 S.E. 370, 82 A.L.R. 386, we said: " '* * * [N]egligence carries with it liability for consequences which, in the light of attendant circumstances, could reasonably have been anticipated by a prudent man, but not for casualties which, though possible, were wholly improbable. One is not charged with foreseeing that which could not be expected to happen." See also *Scott* v. *Simms*, 188 Va. 808, 817, 51 S.E. 2d 250.

As was stated in *Scott* v. *Simms, supra,* " '* * * [I]t is generally held that, in order to warrant a finding that negligence, or any act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. * * * ' *Milwaukee, etc., R. Co.* v. *Kellogg*, 94 U. S. 469, 24 L. Ed. 256, 259; *Wyatt* v. *Chesapeake, etc., Tel. Co., supra.*" 188 Va. at p. 817.

*De Liere* v. *Goldberg, Bowen & Co.*, 30 Cal. App. 612, 159 P. 197 involved an action for personal injuries. Plaintiff alleged in her complaint, among other things, that she had been specially damaged by reason of the fact that in consequence of her injuries she had not been able to keep up the payments on a certain lot and as a result had lost the installments amounting to $254.78 which she had already paid. Defendant made no motion to eliminate this item of damage from the complaint and the issue was joined. Over the objection of defendant the trial court permitted plaintiff to introduce evidence in support of her claim for the installments lost. On appeal the court reduced the judgment of $6,000 by $254.78, the amount of installments lost as shown by the evidence. In so doing, the court said: "We think these damages were too remote and ought not to be allowed * * *."

For other cases holding that the alleged injuries were too remote and were not the proximate result of the negligence complained of

see *Fowlkes* v. *Southern R. Co., supra; Wallace* v. *Jones, supra; Winfree* v. *Jones,* 104 Va. 39, 51 S.E. 153; *Hudson* v. *City of Cleveland,* 3 Ohio Opinions 2d 335, 142 N.E. 2d 535; *Carsten* v. *Northern Pac. R. Co.,* 44 Minn. 454, 47 N.W. 49; *Taylor Imported Motors, Inc.* v. *Smiley,* (Fla.) 143 So. 2d 66.

The record discloses that plaintiff's adjusted gross income for the years 1961 and 1963 was $32.61 and $1,461, respectively. In 1962 his adjusted gross income showed a loss of $953.16. It is thus readily apparent that plaintiff was not conducting a profitable business, and it would be highly speculative to say that if he had not been injured in the accident he would have been able to keep up the payments on the vehicles and prevent repossession of them. But even if it be assumed, *arguendo,* that plaintiff's anticipated profits from the future operation of his business would have been sufficient to have enabled him to meet the installment payments on the vehicles, it cannot be stated with any degree of certainty that he would have applied the profits to these obligations. Illness or unforeseen emergencies could have arisen which would have required the consumption of all the profits to the exclusion of the conditional sale obligations. Certainly, in the light of attending circumstances, the alleged damages in question could not reasonably have been foreseen or anticipated by a prudent person.

We hold that plaintiff's alleged losses by reason of the repossession of the tractor and two trailers, which were either not damaged or not involved in the collision, were speculative, remote, and not the natural and proximate result of any wrongful act on the part of defendant. Hence, the trial court erred in refusing to exclude the evidence of such losses from consideration by the jury.

Defendant also contends that evidence concerning the losses by reason of the repossession of the vehicles was inadmissible because these damages were special in nature and were not pleaded in the motion for judgment. In view of our holding that it was error to admit such evidence, it becomes unnecessary to decide this question.

■ We turn now to a consideration of the instructions in controversy. Defendant contends that the court erred in granting paragraph 9 of Instruction No. 3.

Instruction No. 3 provided in part:

"If from the evidence and the other instructions of the Court you find your verdict in favor of the plaintiff, then in assessing the damages to which he is entitled you may take into consideration any

of the following which you believe from the evidence to have resulted from the collision:

$$* \quad * \quad * \quad * \quad *$$

"9. Damages to property of the plaintiff lost as a direct result of the collision:"

Defendant objected to this instruction on the grounds that there was no evidence adduced showing any physical damage to plaintiff's equipment and that the alleged losses occasioned by repossession of the vehicles had "no direct relationship to the accident itself."

The record is devoid of any proof that any of plaintiff's property was physically damaged as a result of the collision, and since we hold that evidence of alleged losses by reason of repossession of the vehicles was inadmissible, it necessarily follows that the court erred in granting paragraph 9 of Instruction No. 3. An instruction should not be given unless there is evidence tending to prove the facts upon which it is based. *Parker* v. *Leavitt, Adm'r*, 201 Va. 919, 926, 927, 114 S.E. 2d 732.

Defendant also contends that the court erred in refusing to grant Instruction No. C-1, which provided:

"The Court instructs the jury that if you believe from the evidence in this case that the defendant, through no fault of her own, was suddenly confronted with an emergency *created by a pedestrian walking upon the hard surface or the main traveled portion of the highway in the defendant's traffic lane thereof*, and was compelled to act instantly in an effort to avoid *colliding with or striking said pedestrian*, she was not guilty of negligence if she made such a choice as a person of ordinary prudence, placed in such a position might have made, even though the defendant did not make the wisest choice; and whether she used reasonable care under all the circumstances is a question for the jury." (Italics supplied.)

Instruction No. C, offered by defendant, was granted. Its language was similar to that of Instruction No. C-1, except that the italicized portions of Instruction No. C-1 were omitted, and the words "the accident" were substituted in lieu of the phrase "colliding with or striking said pedestrian".

Defendant argues that Instruction No. C-1 stated her theory of the case, viz: that the negligence of the pedestrian in walking upon the traveled portion of the highway in her lane of travel was the proximate cause of the accident and that Instruction No. C failed to cover that point. In oral argument before us counsel for defend-

ant frankly stated that this assignment of error, standing alone, was not sufficient to constitute reversible error. We agree with that statement. We are of opinion that under the evidence adduced Instruction No. C-1 was proper, but the record indicates that defendant had already tendered and had been granted Instruction No. C when she offered Instruction No. C-1. Clearly, she was not entitled to both instructions on the doctrine of sudden emergency. If she preferred Instruction No. C-1 she should have offered to withdraw Instruction No. C.

For the reasons stated, the judgment appealed from is reversed, the verdict set aside and the case remanded for a new trial on all issues.

*Reversed and remanded.*