**PBM PRODUCTS, INC., Plaintiff,**

v.

**MEAD JOHNSON & COMPANY,
Defendant.**

**No. 3:01CV199.**

United States District Court,
E.D. Virginia,
Richmond Division.

Oct. 25, 2001.

Paul Geoffrey Gill, Office of the Public Defender, Richmond, VA, Charles Michael Sims, Robert Francis Redmond, Jr., Le-Clair Ryan, Richmond, VA, David Gregory Green, Corliss Scroggins Lawson, Lord, Bissell & Brook, Atlanta, GA, Eric Peter Schoonveld, Terrence Patrick Canade, Lord, Bissell & Brook, Chicago, IL, for plaintiff.

John Gary Maynard, III, Stephen Patrick Demm, Michael Christian Whitticar, Hunton & Williams, Richmond, VA, John Lyons Marshall, Jr., Betty S.W. Graumlich, McSweeney & Crump, PC, Richmond, VA, Robert Stephen Bennett, Carl Stephen Rauh, Skadden, Arps, Slate, Meagher & Flom, Washington, DC, Constance S. Huttner, Stephanie Joy Kamerow, Kenneth Alan Plevan, Skadden, Arps, Slate, Meagher & Flom, New York City, Behnam Dayanim, Paul, Hastings, Janofsky & Walker, Washington, DC, Patrick Shoulders, Zeimer, Stayman, Weitzel & Shoulders, LLP, Evansville, IN, for defendant.

## *MEMORANDUM OPINION*

SPENCER, District Judge.

THIS MATTER comes before the Court on Defendant Mead Johnson & Company's ("Mead") motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking to dismiss the claim of Plaintiff PBM Products, Inc. ("PBM") for future lost profits of $250 million for the years 2001–2005. For the reasons that follow, Defendant's motion is DENIED.

## I.

Mead and PBM are competitors in the infant formula industry. PBM specializes in "store" brands. During Plaintiff's first year of operations in 1998, its net sales were roughly $15 million and its net profits were $2.7 million. In 1999 its net sales were $28.8 million and its net profits $4.6 million. In 2000, its net sales were $52.5 million and its net profits $7.9 million. Plaintiff's net sales for 2001 (through July 31, 2001) were $44.4 million; estimates for the current year indicate net sales at $80–$85 million. PBM's current market share

is approximately 3% of the $3.1 billion infant formula industry.

Mead sells formula under the Enfamil brand name, and along with Abbott Laboratories, controls $2.9 billion of the infant formula market. Plaintiff's company is minuscule in comparison to Mead Johnson and Abbott Laboratories, but is one of the fastest growing companies in the industry.

In its Complaint, Plaintiff alleged that Mead Johnson started an advertising campaign that falsely and unfairly claimed that the private label infant formulas fell short of recommended levels for calcium and folic acid. This Court entered an Order on April 5, 2001 enjoining Mead from making false claims regarding Plaintiff's products and requiring Mead to withdraw all publications that contained the false claims. In its Order, this Court acknowledged PBM's likelihood of success on the merits of its Complaint.

As a result of Mead's conduct, PBM asserts that it will lose approximately $250 million in future lost profits for the years 2001–2005. PBM relies on the report of its expert, Walter Stosch, to support this claim. Defendant seeks dismissal of PBM's claim for future lost profits on the grounds that it is speculative and punitive.

## II.

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Haavistola v. Community Fire Co. of Rising Sun, Inc.,* 6 F.3d 211, 214 (4th Cir. 1993); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). The Court must view the facts and the inferences drawn therefrom in the light most favorable to the party opposing the motion. *Ballinger v. North*

*Carolina Agr. Extension Serv.,* 815 F.2d 1001, 1004 (4th Cir.), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). While viewing the facts in such a manner, the Court looks to the affidavits or other specific facts to determine whether a triable issue exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). According to the Fourth Circuit,

> In determining whether summary judgment may be granted, the district court must perform a dual inquiry into the *genuineness* and *materiality* of any purported factual issues. Whether an issue is genuine calls for an examination of the entire record then before the court in the form of pleadings, depositions, answers to interrogatories, admissions on file and affidavits, under Rule 56(c) and (e) .... Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes.

*Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985) (emphasis in original). Summary judgment is not appropriate if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. However, if a motion for summary judgment is "properly supported by affidavits, depositions, or answers to interrogatories, the non-moving party may not rest on mere allegations or denials of the pleadings ... [but] must respond by affidavits or otherwise and present specific facts demonstrating a triable genuine issue of material fact." *Garrett v. Gilmore,* 926 F.Supp. 554, 555 (W.D.Va.1996), *aff'd,* 103 F.3d 117 (4th Cir. 1996).

## III.

Defendant's argument that PBM's claim for future lost profits should be dismissed is twofold. First, Defendant argues that PBM's claim under Virginia law is precluded by the "new business" rule. Second, Defendant states that PBM's claim under the Lanham Act is not allowed since it is speculative and punitive. Each of these grounds will be discussed in turn.

### A. State Law Claim

Mead asserts that PBM's claim for lost future profits under Virginia statutory and common law torts of deceptive trade practices, false advertising, unfair competition and product disparagement, is barred by the "new business rule." Citing the Virginia Supreme Court's holding in *Mullen v. Brantley*, 213 Va. 765, 768, 195 S.E.2d 696, 700 (1973), Mead argues that "a loss of anticipated profits from an unestablished business cannot be a proper measure of damages," (Mem. in Support of Mot. for Part. Summ. J. 7).

■ Mead is correct in stating that remote, speculative or uncertain profits are not recoverable. *See, e.g., Haywood v. Massie*, 188 Va. 176, 180, 49 S.E.2d 281, 283 ("[E]vidence of expected profits was too vague, certain and indefinite to warrant a judgment therefor."); *Scheduled Airlines Traffic Offices, Inc. v. Objective, Inc.*, 180 F.3d 583, 588 (4th Cir.1999) ("any estimate would be rooted in speculation and conjecture, both of which constitute improper grounds for damages under Virginia law."). While Mead relies on cases that espouse this doctrine in the contract law context, it is equally applicable to tort claims. *See id.* (nuisance and trespass claims); *Tullock v. Hoops*, 206 Va. 665, 670, 145 S.E.2d 152, 155 (personal injury and property damage sustained in automobile accident).

■ A corollary to the requirement that damages be certain and definite, is the "new business" rule which bars recovery of future profits for new, speculative business ventures. *See Mullen*, 213 Va. at 768, 195 S.E.2d at 700. The Court in *Mullen* stated that, "such a business is a speculative venture, the successful operation of which depends upon future bargains, the status of the market, and too many other contingencies to furnish a safeguard in fixing the measure of damages." *Id.* at 700.

The Virginia Supreme Court discussed what constitutes a new business and outlined the basic characteristics of speculative profits in *ITT Hartford Group, Inc. v. Virginia Financial Associates, Inc.*, 258 Va. 193, 520 S.E.2d 355 (1999). There, the plaintiff sued the defendant insurance company for breach of express and implied contract and fraud. In support of its claim for compensatory and punitive damages, the plaintiff presented the testimony of an expert witness in the insurance industry, to discuss industry customs with respect to mass marketing and to forecast plaintiff's losses. In finding the plaintiff within the ambit of the new business rule, the Court determined that the plaintiff was a new business, despite its existence for over two and one half years. *Id.* at 202, 520 S.E.2d 355. The Court went further, finding the expert's testimony to be uncertain and unreliable, despite the fact that he projected lost income for seventeen years in the future for plaintiff's enterprise.[1] The Court cited four factors for its determination that the expert's testimony should be

---

1. In fact, the expert presented a three page exhibit, full of calculations explaining his projections for a seventeen year period. His projections were based on several detailed assumptions, including the average annual cost of an insurance premium and the renewal rate for new premiums.

excluded: 1) he was not an economist; 2) he had not performed any statistical studies; 3) he had not consulted outside sources regarding the insurance premium calculations; and 4) he had not performed a market analysis.

In a case involving a similar use of an expert, the district court for the Western District of Virginia refused to allow testimony regarding future losses of profit to be introduced into evidence. In that case, the expert estimated future lost profits by taking the plaintiff's historic market share and applying that percentage to the total amount of sales in the relevant market for a three-year period. *Virginia Panel Corporation v. Mac Panel Company,* 1996 WL 335381, *8 (W.D.Va.1996). The expert then applied the incremental profit margin to the projected amount of sales; this figure was then reduced to its present value. *Id.* In light of this methodology, the court still found the projections to be uncertain because the expert failed to dis-aggregate the portion of the market share that was lost as a result of the defendant's anti-competitive behavior from the losses that occurred as a result of other external forces. *Id.*

Mead argues that the new business rule is applicable to PBM. The business is new in that it begun operations in late 1997. Prior to its entry into the private label infant formula industry, no one else had ever sold private label formula. PBM does not have a long-term contract with Wal–Mart (70% of its sales), and therefore faces many uncertainties regarding its future success. Finally, just like the expert in ITT Hartford Group, PBM's expert did not conduct a market analysis and bases his projections only on PBM's prior three years of sales.

PBM challenges Mead's characterization of its business as new. Plaintiff contends that PBM's opportunity to sell hundreds of millions of dollars in infant formula was derived from its relationship with Wyeth Nutritionals ("Wyeth"), the second largest infant formula manufacturer in the world; PBM contracted with Wyeth for a supply of FDA-approved infant formula. Plaintiff points out that unlike the breach of contract cases where courts have applied the new business rule, PBM's state law claim arises out of tort law, PBM has a substantial sales history as evidenced by its doubling of sales each year since its inception, and PBM has a significant market share in an established marketplace.

Despite PBM's contention that the new business rule only applies in the contract context, the Fourth Circuit has contemplated its applicability to tort claims. *See Blue Ridge Bank v. Veribanc,* 866 F.2d 681, 690 (invoking the new business rule in a libel action, but holding that the plaintiff's business was not new). However, PBM is not a new business. It has been in operation since 1997 and sold $2.1 million of infant formula that year. In every year since its inception, PBM sales grew at an increasing rate. The new business rule simply does not apply to Plaintiff. Moreover, this Court finds that PBM's estimation of its future lost profits is not so speculative as to warrant dismissal on summary judgment. PBM experienced four years of rapid growth, and it was a business that Mead obviously feared or anxiously noticed.[2] In addition, PBM has reasonably calculated its losses. Mead projected PBM to gain market share until

---

2. Exhibit 13 to PBM's Opposition to Mead's Motion for Partial Summary Judgment Regarding PBM's Right to Prove and Recover Future Lost Profits is an in-house communication sent within Mead stating, "[p]rivate label infant formulas are a growing threat to major infant formula manufacturers."

2005, with a maximum of 37% of the market. (Opp'n to Mot. for Partial Summ. J., Ex. 18). PBM's expert, Walter A. Stosch calculated PBM's loss profits based on PBM's market share increasing from 2.0% in the year 2000 to 15.2% by the year 2005. (Opp'n to Mot. for P. Summ. J., Ex. 8). This estimate is more conservative than PBM's market share as estimated by Mead. Accordingly, Defendant's Motion for Summary Judgement should be Denied as to this ground.

■ Finally, in light of Mead's stipulation that it disseminated literally false advertising statements concerning store brand infant formula, its attempt to invoke the new business rule to preclude Mead's damage claim for future lost profits is terribly misplaced. Were this Court to adopt Mead's argument, then any party could assert false statements against a relatively new competitor, injure that competitor's business, and escape from any punishment or accountability, simply because that competitor had to speculate as to its damages. New businesses would fall prey to intentional attacks, because the new business rule provides them with no legal recourse. In this case, that is not the appropriate course.

### B. Lanham Act Claim

In the Complaint, PBM seeks to recover relief under 15 U.S.C. § 1117, including all of Mead's profits derived from its unlawful conduct, all of PBM's damages resulting from Mead's violation of 15 U.S.C. § 1125, treble damages, all of PBM's expenditures required to correct the false and misleading statements made by Mead, and all of the costs and expenses of bringing the lawsuit. Mead contends that the Lanham Act precludes Plaintiff's recovery of lost future profits because they are speculative and punitive.

The actual relevant language of 15 U.S.C. § 1117 provides:

> When a violation...under section 1125(a) of this title, shall have been established in any civil action...the plaintiff shall be entitled...subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action...In assessing damages, the court may enter a judgment...for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.

15 U.S.C. § 1117(a).

■ It is clear that the Lanham Act prohibits punitive damages. However, it does allow a plaintiff to recover either the defendant's profits or its own damages, trebled. The purpose of this provision is to allow a plaintiff to estimate the financial loss suffered as a result of the defendant's bad acts. Interestingly, while the Act states that an award must be compensatory, not punitive, it affords the trial court the discretion to grant an award up to three times larger than the plaintiff's actual damages.

■ In the present case, Mead argues that because the amount of recovery PBM is seeking is "grossly inflated," the Court should dismiss PBM's claim as punitive. However, in a motion for summary judgment, all facts are to be construed in the light most favorable to the non-moving party. PBM argues that its estimation of lost profits is reasonable, reliable, and is consistent with the growth pattern and

ranges established by Mead in its own internal reports (Expert Report Walter Stosch, September 7, 2001, at 5.) Mead wants this Court to simply look at the amount of the lost profits claim and determine, as a matter of law, that such claim is punitive. This is a dispute of material fact, and PBM has provided ample explanation of the methodology, figures, and assumptions employed in reaching its estimate.

Mead also claims that recovery under the Lanham Act is barred because the Plaintiff's estimate of its actual damages is speculative and uncertain. However, a plaintiff seeking relief under the Lanham Act is not required to prove the amount of its damages with exacting specificity. *See Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738 (7th Cir.1985) (stating that in an unfair trade practices case, plaintiff is held to a lower burden of proof in determining the exact amount of damages); *Fuller Products Co. v. Fuller Brush Co.*, 299 F.2d 772 (7th Cir.1962) (stating that plaintiff had burden of proving actual damages, even though the result could only be approximate); *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562 (11th Cir.1986) (stating that the finding of damages was not speculative where it was supported by credible expert testimony); *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 969–70 (D.C.Cir. 1990) ("When assessing these actual damages, the district court may take into account the difficulty of proving an exact amount of damages from false advertising.").

The Fourth Circuit has not ruled on the degree of certainty the Lanham Act requires for damage awards, and other circuits are split on the issue. In light of underlying policy that the "[t]rial court's primary function is to make violations of Lanham Act unprofitable to the infringing party," *Otis Clapp & Son, Inc.*, 754 F.2d at 744, this Court is unwilling to dismiss Plaintiff's claim for future damages at this time. *See also JTH Tax, Inc. v. H & R Block Eastern Tax Services*, 128 F.Supp.2d 926, 944 (E.D.Va. Feb.23, 2001) ("the wrongdoer shall bear the risk of the uncertainty which his own wrong has created") (*quoting ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 969 (D.C.Cir.1990)).

**IV.**

For the reasons discussed in this memorandum, the Court finds that Plaintiff has raised a genuine issue of material fact with respect to its claim for future lost profits. Accordingly, Defendant's Motion for Summary Judgment is DENIED.